<div align="right">BABIN<br>*v.*<br>'NOLAN.</div>

<div align="right">6 297|<br>d117 814|</div>

## HENRY G. BURROWS *v.* P. LEPAGE PEIRCE et al.

The damages which may be recovered by the vendee from the vendor of real estate does not extend to the increased value of the property which has been caused by the mere fluctuation of estimated value. If the vendee has been unable to get possession of the property he is entitled to be reimbursed the price he has paid with interest from the date of payment.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge,* J. *Hite* and *Gaither,* for appellant. *Watts* and *Spring,* for appellees. The judges of the court gave their opinions *seriatim.*

BURROWS
*v.*
PEIRCE.

PRESTON, J. In 1845, a separation of property was decreed between *R. F. Nichols* and his late wife, and on the 16th of June, 1846, in pursuance thereof, they made a partition of their property before a notary public. In making the partition, four lots of ground in the town of McDonogh were conveyed to *Mrs. Nichols*. It was expressed in the conveyance that it was made without warranty.

It appears that one of the lots did not belong to *Nichols*, he having sold it some years before to *George A. Puddy* and his wife. In the sale to *Puddy* and wife, *Mrs. Nichols* had joined to renounce her matrimonial rights.

On the 6th of January, 1847, *Mrs. Nichols* sold the four lots to *H. G. Burrows*, for the price of two hundred and fifty dollars. It appears that *Puddy* and wife had improved their lot, and that, at the time of the sale to *Burrows*, it was worth, with the improvements, several thousand dollars.

*Burrows* sues *Puddy* and wife for their property, but makes the heirs of *Mrs. Nichols* parties, knowing she had acquired no title, and claims from them four thousand dollars for the value of the property and damages.

The heirs call *R. F. Nichols* in warranty. *Puddy* and wife call both them and *R. F. Nichols* in warranty.

*R. F. Nichols* pleads that he and his wife committed an error in subjecting the lot to their partition, and admits that *Burrows* acquired no title to it; but denies that he is liable to any of the parties, because in conveying to his wife, he expressly exonerated himself from warranty.

We have no doubt *Mrs. Nichols*, in conveying the lot to *Burrows*, believed it to be her property, under the conveyance from her husband, and acted in perfect good faith. The fact, that several years before she joined her husband in the sale to *Puddy* and wife to renounce her matrimonial rights, affords no presumption to the contrary. It was community property, of which he had the sole management and disposal. It does not appear by the partition afterwards, that she had any matrimonial rights upon it; but whether she had or not, like nine wives in ten, she probably hardly inquired what particular lot belonging to their community the husband was selling.

As, therefore, she had no intention to defraud *Burrows*, her sale to him of this particular lot is simply null, because it did not belong to her. What is the measure of *Burrows'* claim against her heirs? We think nothing more than the price he paid for the property.

It is true, the principles of speculation in this trading community give countenance to the rule claimed by *Burrows*, that he should recover the value of the property which was fifty times the price paid for it. But speculation should not mislead us from the true principles of the contract of sale. It is the rule of morality, favored as far as possible by both law and equity, that the buyer should give the full value of the thing purchased and seek to acquire it for no less ; and the seller should dispose of it for its fair value and seek for no more ; and that the only basis of the transaction should be that the property and its use is more convenient and useful to the purchaser than the money and its interest, and *vice versa*, that the money and its interest is more useful to the seller than the property. Keeping these principles in view, if from any cause without fault on either side, the sale is annulled, the price paid should alone be restored. Damages indeed may be given, but they must grow out of other circumstances than that the purchaser got a great bargain or made a fine speculation out of the vendor.

It is urged that the increased value of the property sold since the sale should be allowed to the purchaser in adition to the price paid, as damages against the

vendor and warrantor, under article 2482 of the Code. By an express article of the Code of 1808, the buyer when evicted, was entitled to recover from his warrantor the increased value of the property sold in addition to the price paid. This provision was literally translated from the 1633d article of the Napoleon Code, and probably well suited to the French Empire, where the value of property was stable, the resources of the country developed, and its currency not subject to sudden fluctuations. The rule, however, operated most injuriously in this State, so much so as to deter persons from disposing of their property or warranting their sales. Whoever sold in the vicinity of this growing city, although in the most perfect good faith, was liable to be ruined by some dormant claim hunted up by litigants and speculators. And the same effect was produced in the rich parishes whose resources were rapidly developing. So a man selling when our monied institutions contracted the currency to the lowest point of depression, and perhaps forced to sell from that cause, was liable to be totally ruined when a bloated currency doubled or quadrupled the apparent value of property, and made it the interest of the vendee himself to have adverse claims raked up that he might recover quadruple the price from his warrantor.

The evil was so crying that it did not escape the attention of all fair dealers, and was brought to the notice of the jurisconsults who were selected to revise the Code of 1808. Indeed, the very year they made their report to the Legislature, our Supreme Court had made a decision in the case of *Castellano* v. *Peillon*, 7 N. S. 472, disregarding the provision of the Code of 1808, by condemning the warrantor to pay only the price he had received for a slave, and not the price for which his vendee had sold him, in opposition to the judgment of the district court.

The jurisconsults, therefore, recommended that the clause in the Old Code should be suppressed. It was in these words: "If, at the time of the eviction, the thing sold has risen in value, even without the buyer having contributed thereto, the seller is bound to pay him the amount of said augmentation of value above the price of the sale." The Legislature suppressed this clause of the law and substituted nothing for it.

They repealed it for the following reasons, submitted by the jurisconsults: "The article which requires that the seller shall not only restore to the purchaser the price he has received, but shall pay him the increasing value, which the thing sold may have acquired in the ordinary course of things and without any act of the purchaser, is a provision evidently dangerous, and might cause the ruin of a vendor selling in good faith, in a country where the fluctuations in value are so great. If the thing sold were diminishing in value, we should think it unjust that the buyer should only receive the price it is worth at the time of the eviction, and that the seller should profit by the excess. It is equally contrary to justice that the buyer should be reimbursed beyond what he has actually given or expended."

Immediately after the repeal of the provision of the Old Code, the case of *Morris* v. *Abat et al.* occurred. *Millaudon* purchased property from *McCarty* for $1500, and sold it to *Abat*, who was evicted, for $3000. *Abat* recovered $3000 from *Millaudon*, and he $1500 from *McCarty*. *Millaudon* appealed; insisting upon his right to the increased value of the property by way of damages, as is done in the present case. The district court had given very able reasons for deciding, that under the above mentioned legislation, the increased value of the property sold could not be considered in affording the buyer indemnity under the warranty. His judgment was affirmed by the Supreme Court; Martin,

BURROWS
*v.*
PEIRCE.

Chief Justice, interpreting the legislation in this strong and conclusive manner: "We are called upon to test the correctness of the decision of the district judge on the legal extent of the vendor's liability on an eviction. It is not denied that under the Code of 1808, this liability extended to an indemnification for the loss which resulted of the profits arising from the difference of value of the thing sold by events to which the vendee had not contributed; an article of that code providing that if, at the time of the eviction, the thing sold has risen in value even without the buyer having contributed thereto, the seller is bound to pay the amount of this augmentation of value beyond the price of the sale.

"The compilers of the New Code recommended the suppression of this article, as containing a provision evidently dangerous, which might cause the ruin of a vendor in good faith, in a country in which the fluctuation of value is great. This article was accordingly suppressed and the vendors liability restricted by article 2482 : 1. To the restitution of the price. 2. To that of the fruits or revenues, if the party has been obliged to return them. 3. That of costs of suit. 4. In fine, all the damages the party has suffered, besides the price which he has paid. To say that the word damages in the above article includes, as a loss of profits, the augmentation of the value of the thing sold above the price of sale, would be to thwart rather than carry into effect the express intentions of the Legislature. It would be to reinstate the whole of the former code, suppressed on the recommendation of the compilers of the new one, and since formally repealed. The construction adopted by the district judge appears to us perfectly correct."

The same controversy soon came before the Supreme Court again in the case of *Bissell and Wife* v. *Erwin's Heirs*, 13 L. R. 148. The district court had followed the late decision in the case of *Morris* v. *Abat*, and rejected evidence of the increased value of the property as a matter to be considered in fixing the indemnification to be paid by the warrantor to the evicted vendee, and limited it to the price paid by him. The Supreme Court reversed the decision and remanded the cause to receive the evidence ; but admitted that it was only to be considered in estimating the damages to be recovered by the vendee, and which might be moderated by the judge according to circumstances, the chief of which were, that the increased value contemplated by the parties at the time of the sale should be taken into the account, and not such as resulted from accidental and transient causes.

The two decisions being directly in conflict, we are compelled to decide, in the present case, which is the true interpretation of article 2482 of the New Code.

It is urged, that the last decision is correct, because it adopts the Spanish jurisprudence by which we were governed before the enactment in the Code of 1808, which was repealed by the Code of 1824; that it conforms to the French jurisprudence before the adoption of a similar provision in the Napoleon Code, and also to the principle on the subject contained in the great and equitable system of Roman jurisprudence.

It is to be observed, that all the civil laws in force in the State previously to the adoption of the Code of 1824, were expressly abrogated by the 25th section of an act approved the 25th of March, 1828; and, therefore, we are not obliged to adopt the principles of the civil law on the subject before us if we think the rule of the common law more equitable and better adapted to the circumstances of our State.

Before expressing an opinion as to the respective merits of the principles of the civil and common law on the subject before us, it should be observed that,

there is reason to believe that the Legislature intended to adopt the principles of the common law. The reasons submitted to the Legislature for excluding the increased value of the property as a standard of indemnification in case of eviction, bear intrinsic evidence that they were penned by the Jurisconsult Livingston. He was educated in the principles of the common law. The simple and invariable rule of indemnification to the evicted vendee in that system, is the restoration of the price paid by him, and nothing more. It has existed from time immemorial, for it is laid down in the black letter of Bracton & Broke, and in the year books of Edward the III. and Henry the VI., the Justinians of England. Mr. Livingston commenced his distinguished career as a lawyer in the State of New York, where the grantor with warranty has no concern with the increasd value of the thing sold, but restores only the price received by him.

It was natural that in recommending the repeal of one rule of law on the ground that it was ruinous to the State, he should recommend that rule under which he was educated, and which all the great writers on English and American equity have recommended as a moderate, safe and just principle. It is believed that the principle was adopted in every State in the Union, except Massachusetts, Connecticut, Virginia and South Carolina; and although the rule of the civil law was originally adopted in Virginia and South Carolina, it has since been abandoned and the rule of the common law embraced.

If the legislation itself on the subject before us admitted of any doubt, this reminiscence would leave none, that the great jurisconsult who controlled this part of the code, recommended and succeed in inducing the Legislature to adopt a simple, just and certain rule in harmony with that of almost every sister State, all to some extent interested in a uniform system of warranty and not that of foreign countries, from whose principles, in the very article of the code he was amending, he was endeavoring to disenthral our legislation.

The community generally believed that the principle of the common law had been adopted; and this led to the careful investigation of titles to real property about to be sold by the vendees, and has eminently contributed to the settlement of titles in our State. Incalculable frauds growing out of the principle in the Old Code were suppressed, and its intolerable injustice counteracted.

The principle that the return of the price paid should be the only standard of indemnification, had the advantage of being a fixed and invariable rule in all cases, and removed a great objection in any system of jurisprudence—that of leaving everything to the discretion of a judge on a subject with regard to which there might be a precise rule of law. The Roman, Spanish and French jurisconsults feeling that to allow the increased value of the property as an indemnity, would often lead to great injustice, and even the ruin of vendors in the best faith, left the amount to the discretion of the judge; thereby admitting that it was a vicious principle, and to be moderated by an arbitrary discretion. Our Legislature chose to abolish the principle and the discretion, and have done so by repealing the law and leaving in the code a fixed rule for all cases.

The rule of the common law conforms to the rules as to damages in all other cases. Damages are allowed for injuries flowing immediately and not consequentially from the acts of the parties. The increasing value of property sold by a vendor does not flow from his acts, but from extraneous circumstances over which he has no control. If the vendee sells the property for an advanced price which he loses when the title fails, it is a loss growing immediately out of his sale, and not that of his vendor. The loss growing out of the sale of his vendor is the price he paid, for which he is indemnified exactly by its restoration.

BURROWS
v.
PEIRCE.

The rule of the common law conforms to one of the most common maxims of Roman equity, while the principles of the civil law on this subject are entirely inconsistent with it. *Cujus commodum ejus debet esse incommodum.* The vendor and vendee being both in good faith, if the sale fails without the fault of either, if the rule of our code is adopted, the price is restored and the perfect equality of the contract remains established. But if the rule of the civil law is adopted, the vendee gains all the increasing value of the property, there being no defect in the title; and yet could loose nothing for having, like his vendor, failed to discover the defect, if any existed; whilst the vendor, for the same misfortune, would loose not only the price received, but the increasing value of the property, without the possibility of participating in it under any circumstances. Again, if the thing sold has greatly depreciated in value far below the price received, still the price paid is to be restored, in case of eviction, by the express provision of the article of our code; showing clearly that an ever varying rule could not have been contemplated by our Legislature, and that in place thereof they have established a fixed rule for every case.

I may be induced by necessity, or having no use for a thing, to sell it for half its value. Am I, in case the sale fails, to restore not only its value at the time of sale, but perhaps double, by its increase in value. *Mrs. Nichols* sold the premises which are the subject of this suit for a fiftieth part of their value at the time of sale. No reason can be given for the restoration of a dollar more than she received, which would not equally require the restoration of the whole value then and all the increase since.

A sale is a commutative contract, in which the most perfect equality of liability should prevail. The vendor is bound to warranty; the vendee to pay the price at the time agreed. If the vendee fails to pay the price at the time, no damages are allowed except five per cent interest; and that only when the thing sold produces or might have produced fruits. But many cases may occur where the non-payment of the price at the time agreed subjects the vendor to ruinous suits, the seizure and sale of his remaining property, and the suffering of himself and family from poverty and want. He can recover no damages for all this except the interest fixed by law. Cases have occurred, growing out of the demoralizing system of speculation, in which the vendee has withheld the price for the express purpose of purchasing it at a sacrifice when sold under executions against his vendor. So, if the vendor could have realized the price at the time of payment, he might perhaps have purchased other property worth ten times that which he sold; yet he can recover no damages, even although the vendee should have withheld the price for the express purpose of securing the speculation himself.

The principles of law and morality recognize none of these schemes and speculations, and do not endeavor to settle an account of them. Those who receive money for the transfer in good faith of something equal in value, as they supposed, must return the money, and no more, if it turns out that nothing was transferred. The sale of the property of another is null; it may give rise to damages, but only when there is fraud or negligence, as in all other acts of man.

Instead of the price alone as the rule of indemnification, the court, in the case of *Bissell* v. *Erwin's Heirs*, added also the increased value contemplated by the parties, and not that which arose from transient or accidental circumstances. It would be perfectly illusory to attempt to come to any certainty as to the contemplations of the parties at the time of the sale. The buyer probably dreamed of thousands, while the seller contemplated a depreciation in the value of the

thing sold. The buyer may have known, certainly, of an invaluable gold mine in the premises, unknown to his vendor, and contemplated the wealth of Crœsus from a fact neither accidental nor transient. It is impossible, too, to conceive a reason for allowing any part of the increased value as damages, which would not apply to and require the allowance of the whole. Thus, Pothier puts a case in which the increased value by the improvement of the country quadrupled the value of the property when sold, and says damages should be allowed in that case to only the amount of double the price. There is no reason whatever for this arbitrary rule, if the increased value is considered at all.

The increased value, as a rule of indemnification, is subject to every possible fluctuation of property and money, and therefore in no two cases of sales could be the same. The seller could never know the extent of his obligations; at one time they might be thousands, at another hundreds, and *vice versa*. The increase in the value of property most frequently occurs by the improvement and peopling of a new country or city. In almost all such cases, the actual settlers and occupants fully pay for the increasing value of the property by the social advantages they forego, the hardships they endure, the public and private duties they perform, the money they expend in taxes, labor and improvements. This is so universal, that it may always be presumed until the contrary is clearly established by proof. This increased value, therefore, is an improvement of the aggregate property by the aggregate means and industry of the occupants, and should, in my opinion, under our equitable system of laws, be paid by the speculator and purchaser or possessor of dormant claims or old titles, who lies by until, by the toil and suffering of the occupants, the improvements are added to the property in good faith. The increase in the value of the property growing out of the melioration of the country falls most equitably under the denomination of useful improvements to be reimbursed, under article 2485 of the Code, by the person who evicts the vendee and possessor in good faith. Such a possessor has a right, in case of eviction from the thing reclaimed, to retain it until he is reimbursed the expenses incurred upon it, or, as expressed in the French of article 3416 of the Code, Jusqu'au remboursement des imponges qu'el peut y avoir faites. And probably this just indemnification to the possessor in good faith would be much more generally and liberally allowed by courts and juries, if it was as clearly settled as it is just that they should have no recourse for the same against their warrantors. This principle, if fully established, would thus have a most salutary effect in discouraging inequitable litigation.

Land was given by the Creator to man for improvement and cultivation by the possessor in good faith, not for speculation. His security and encouragement should be the great object of civil laws; and speculation in the soil and in law-suits should receive no encouragement from legislation or courts of justice. Right, according to strict law, should be accorded to such speculations, and nothing more. It may then be asked what is meant by damages allowed as an indemnification for eviction in the New Code. The answer is plain: precisely what was meant by damages in the Old Code; for the provision as to damages in it is preserved *verbatim* in the New Code. Now, damages in the Old Code did not mean the increased value of the property, because that was established as one item of indemnification in a separate and independent clause of the code. Therefore, the provision for damages preserved *verbatim* in the New Code does not mean or include the increased value of the property.

The damages referred to are those suffered by the buyer when the vendor has knowingly and wilfully sold the property of another to a vendee ignorant of

the outstanding title. They are referred to in article 2486 of the Code, and include all expenses, even those of the embellishments of luxury, that the buyer has been at in improving the property. And even although the sale be made in good faith, yet if the warrantor, though cited, fails to appear and defend the suit, he is liable to the defendant for the fees of his counsel, for his trouble and necessary expenses beyond costs incurred in defending it. The very mode of expression, however, in the article, " damages, if any " indicates that but little, and that not often, would be allowed under this head of indemnification. In this very case, *Burrows* is to be allowed damages because he never had nor could obtain the possession or enjoyment of the lot. He should recover interest on the price paid for it from the day of sale, and which he could not have recovered if he had enjoyed the fruits and revenues of the property. The heirs of *Mrs. Nichols* are therefore liable to *Burrows* only for sixty dollars and fifty cents, being the fourth of the price of the four lots sold to him in block for two hundred and fifty dollars, and for interest from the day of sale.

*Mrs. Nichols* sold with this clause in her act of sale, that " she does sell, convey and transfer and set over, with all legal warranty and with substitution and subrogation to all her rights of warranty against her own vendors or authors." This clause entitles *Burrows* to all her rights against *R. F. Nichols.* Although the latter did not warrant the title of the lot to his wife, yet he is bound by his own act, in selling the property long before the partition with her, in which he purported to convey it again, and could not exonerate himself from warranty against this act. Code, art. 2480. He is also liable, without warranty, for the consideration he received. Art. 2481. He has not shown for what the lot was estimated in the partition; and in the absence of that estimation, the loss suffered by *Mrs. Nichols* and her heirs affords a fair criterion of the indemnification for which he is liable.

It is therefore ordered, adjudged and decreed, that the judgment of the court below be affirmed, with this amendment, that said plaintiff recover interest from the 6th day of January, 1847, until paid, on said sum of sixty dollars fifty cents, from said heirs of *Mrs. Nichols* and said *R. F. Nichols in solido*, and that said heirs of *Mrs. Nichols*, upon payment by them, recover like interest from their warrantor, *R. F. Nichols.* It is further ordered and decreed, that the costs of this appeal be paid by said heirs of *Mrs. Nichols* and *R. F. Nichols.*

EUSTIS, C. J. The article of the Old Code requiring the seller to reimburse to the purchaser in case of eviction, if at the time of the eviction the thing sold had risen in value, even without the buyer having contributed thereto, the amount of the increase of value above the price of the sale, is identical with the article 1633 of the Napoleon. In adopting the amendments of the code, this article was deliberately expunged; and the reasons for this change of the law were given. It has no place in the Code of 1825. Any introduction of the repudiated principle, I think, would be in conflict with the declared will of the Legislature. I understand the district judge as disallowing the claim of the purchaser who has been evicted against his vendor for the increased value of the lot at the time of eviction. I think, from the evidence before him he decided correctly, under the article 2482 of the Code, in limiting the claim to the price of the lot, and excluding the amount of the increased value.

The implied warranty of the contract of sale imposes no restraint on parties in relation to the extent of the indemnity in case of eviction, which they may choose to stipulate between themselves, with but two exceptions: one is, that the seller cannot exonerate himself from the consequences of his own acts;

<div style="float:right">BURROWS
*v.*
PEIRCE.</div>

the other, that he is always bound to return the price, unless the purchaser was aware of the danger of eviction, and purchased at his own risk. Code 2479, *et seq.*

Parties may provide in their covenants of warranty for any contingency which may arise after the sale and affect the value of the property sold. I wish my opinion to be understood as confined to cases similar to the present, which may present the fact of a naked increase in the saleable value of the property sold. Cases may occur in which the rule acted upon in this case may not be applicable.

I think the judgment of the district court ought to be affirmed.

SLIDELL, J. The Code of 1808 contained the following provision: "If at the time of the eviction the thing sold has risen in value, even without the buyer having contributed thereto, the seller is bound to pay him the amount of said augmentation of value above the price of the sale."—p. 354, art. 57.

The jurisconsults who were charged with the revision of that code, in presenting to the Legislature a body of "additions and amendments," proposed the suppression of article 57, and gave the following reasons for doing so. "This article, which requires that the seller shall not only restore to the purchaser the price he has received, but shall pay him the increased value which the thing sold may have acquired by the ordinary course of things, and without any act of the purchaser, is a provision evidently dangerous, and might cause the ruin of a vendor selling in good faith, in a country where the fluctuations of value are so great."

The suggestion of the revisers was adopted by the Legislature, and the article 57 was omitted in the Code of 1825.

In view of these facts, I am unable to assent to the doctrine, that a vendor in good faith can be held liable for the increased value of the property sold, upon the eviction of his vendee, even with the limitations borrowed from the Roman law restricting the liability to double the price paid.

If the seller is answerable at all for the increased value, I do not perceive on principle how that liability can be partially released by judicial discretion. In the Roman law the limitation was a matter of positive legislation.

It appears to me that there is another very grave objection to the doctrine laid down in the opinion prepared by one of my brethren in the present case; and that is, the uncertainty of the standard borrowed from the Roman law. It leaves too much to the discretion of the judge. The price is a certain standard.

It seems to me inequitable to throw upon the vendor the grievous burden of restoring double the price if the buyer is evicted, when we consider that an increase in value, no matter how enormous, gives the seller no right to demand a further sum from the purchaser; and when we also consider, that if the value should depreciate and the purchaser be evicted, he still is entitled to the restitution of the entire price under the article 2483.

For the above reasons, which, with others, are more fully stated in the opinion prepared by Mr. Justice Preston, I think the judgment of the district court should be affirmed, with the amendment, as to interest, suggested in the decree prepared by Mr. Justice Preston.

ROST, J. In a partition of the community property between *R. F. Nichols* and *Mary C. Nichols*, his wife, made in execution of a judgment of separation of property, four lots in the town of McDonogh had previously been sold by *Nichols* to *Puddy* and wife, and *Mrs. Nichols* had appeared in the sale and renounced her rights of mortgage thereon.

In 1847, *Mrs. Nichols* sold the four lots to the plaintiff for $250. Under this sale the plaintiff now sues *Puddy* and wife, who are in actual possession of the lot, and have made valuable improvements upon it. He has made the heirs of *Mrs. Nichols*, who has since died, parties to the proceeding; and in case he should fail to recover the property, he claims from them $4000 damages for its increased value since the sale to him. The heirs of *Mrs. Nichols* have called *R. F. Nichols* in warranty, and *Puddy* and wife have called both them and *Nichols* in warranty.

*Nichols*, in his pleadings, admits the previous conveyance to *Puddy* and wife, and avers that the lot in controversy was included in the partition through error. He concedes, that the plaintiff has no title to the lot, but alleges that he transferred it without warranty, and that the defendants have no claim against him.

The evidence in the record leaves no doubt in my mind as to the good faith of *Mrs. Nichols* when she sold to the plaintiff. She could have had no motive to receive it in part payment of her share, unless she believed that it belonged to her husband. It is true, she had joined in the act of sale to renounce her rights of mortgage; but we all know, that although married women are daily called upon to make such renunciations, there is not one in a hundred who in sales of vacant lots, preserves such a recollection of the description of the property sold as will subsequently enable her to identify it. We are satisfied that the statement of *R. F. Nichols*, that this lot was included in the partition through error is correct.

The good faith of the vendors being ascertained, the question is as to the measure of damages against them. The district judge was of opinion that *Mrs. Nichols* was only bound to return the price she had received, and gave judgment accordingly. He also gave judgment in favor of her heirs against *Nichols*, under article 2481 C. C. The plaintiff alone has appealed.

The amount involved in this controversy is inconsiderable, but the principle upon which it is to be decided is of the highest importance. Art. 2482 of the Code provides, that when the buyer is evicted, he has the right to claim from his vendor, 1st, the restitution of the price; 2d, that of the fruits or revenues when he is obliged to return them to the owner who evicts him; 3d, all the costs of suit; 4th, the damages, when he has suffered any, besides the price he has paid.

There is no contest between the parties as to the price and the costs of suit; and the property produces no fruits. But the plaintiff alleges that it has increased in value from sixty-two dollars and a half to four thousand dollars, and claims the difference between the two sums as damages suffered by him, besides the price he has paid. The defendants, on the other hand, insist that they owe no damages beyond the price. This defence prevailed in the district court.

The damages allowed by article 2482 are undoubtedly something over and above the price. They are not those arising from the restitution of fruits by the person evicted; for the article contains a distinct provision in relation to those fruits. They are not those which arise from the loss of the improvements made on the property. Article 2485 provides for their reimbursement. They are damages which arise from the loss of the thing itself *propter ipsam rem non habitam*, such as the loss of the increased value of the thing at the time of the eviction.

By a provision of the Old Code, which is also found in the Code of France, if at the time of the eviction the thing sold had risen in value, even without the buyer having contributed thereto, the seller was bound to pay him the augmentation over the price of the sale. Merlin, commenting upon this article, was of opinion, that when the increase of value was enormous and such as could not

have been foreseen by the parties at the time of the contract, it did not prevent the judge from moderating the damages according to the rules in force before its adoption. Repertoire, *verbo* Guarantee. But he appears to be alone in this opinion, all the other commentators within our reach, and the Court of Cassation with them, agreeing that the disposition of the code is too clear and absolute to leave any discretion to the judge; and that the damages should in all cases be assessed at the full amount of the augmentation of value. 16 Duranton, 294, 295, 296. Toullier, Obligations, No. 285. Troplong, De la Vente, No. 506. Rogron on Art. 1633 Nap. Code.

Such appears also to have been the opinion of the compilers of the Code of 1825; and they recommended the suppression of the article of the Old Code on the ground, that in a country where the fluctuations of value are so great, such a provision might cause the ruin of a vendor in good faith. The article was accordingly suppressed; and the rights of the party evicted were left as they stood under the Spanish law before the adoption of the Code of 1808, under the general provision that he should be entitled to recover damages, when he had suffered any, besides the price he had paid. Partida 5, tit. 5, law 32.

The Legislature in suppressing that article acted on the advice given them, to modify the legislation so as not to compel courts of justice to allow the full amount of the augmentation of value when it was enormous and such as the parties could not have anticipated at the time of the contract. But, as they ordained by article 2485 that if at the time of the eviction the property was impaired in value the seller would still be bound for the restitution of the full price, the presumption is irresistible that when it had greatly increased in value they intended that the seller should be bound to make indemnity for some portion of that increase.

Although the damages alluded to in article 2482 are mentioned in general terms, there are other articles in the code by which their nature and extent may be ascertained. Article 2492 provides, that other questions arising from a claim of damages resulting to the buyer from the non-execution of the contract of sale shall be decided by the general rules established under the title of coventional obligations. Under this article, damages arising from a breach of warranty are of the same nature and are subject to the same rules as those resulting from the inexecution of contracts generally; and it is clear that on principle there ought to be no difference between them.

The general rule as to the measure of damages, established under the title of conventional obligations, when the defendant is in good faith, is, that he is liable for such damages as were contemplated or may be reasonably supposed to have entered into the contemplation of the parties, and no more. Art. 1928. If, therefore, it can be reasonably presumed that at the time of the sale in this case, an augmentation of the value of the property sold entered into the contemplation of the parties, the defendant is bound to make indemnity to the amount of the augmentation contemplated. Such is the jurisprudence of Spain and of France before the Napoleon Code; and both countries have taken it from that fountain head of all equity, the Roman law. Partidas, Loco Citato, and Commentary of Gregorio Lopez. Pothier, De la Vente, No. 133. Pothier on Obligations, No. 164.

It is a great error to attribute the increase in the value of the real estate in a country like this, to speculation. That value increases with the capital of the country, and is the happy result of the industry and intelligence of our people, and of the protection which our institutions and laws give to persons and property.

It will be a crying injustice, if in cases of eviction that increase is not to a reasonable extent viewed as a profit made on the original cost.

The amount of damages which may be reasonably supposed to have entered into the contemplation of the parties at the time of the contract is a question left in every particular case to the discretion of the judge or jury. But the civil law had placed limits within which that discretion was to be exercised. By a law of Justinian, damages *in casibus certis*, that is to say, such as relate exclusively to the thing which formed the subject of the obligation, could never be assessed at more than double the value of the object, including that value itself. Cod. De sententia quæ pro eo quod interest.

This law is quoted with approbation by Pothier and Gregorio Lopez. It had not, it is true, the force of law either in France or Spain; but it was considered by the jurisconsults of those countries, that Justinian had only established the limit which the law contains, because it was impossible to suppose that the parties should at the time of the contract have had in contemplation, in any case, damages larger in amount than the subject matter of the contract; and they gave to the principle and reason of the law the effect which the law itself could not have. Dumoulin, Tract de eo quod Interest, Nos. 57 and 60.

Pothier puts a case, for the application of that rule, which is of daily occurrence among us, and which gives rise to many claims in warranty: I have purchased a vineyard and house in a remote province, for four thousand francs. When I purchased, the wine made on it was unsaleable for want of means to get it to market. Since that time a canal has been made, which affords cheap means of transportation. The wine has risen to more than four times its former value, and the land has come to be worth over sixteen thousand francs. It is clear, that if I am evicted, the damages resulting from the eviction arising from the loss of the property alone, will be over sixteen thousand francs. But yet, under the principle of the law of Justinian, for all the augmentation of value, and including the price, my vendor, if he is in good faith, shall only be bound to refund to me eight thousand francs. So, with us, men of small means purchase from speculators in public lands as much land as they can pay for, in some remote part of the State. At the beginning they have no means of transportation for their produce, and, besides supplying them with the necessaries of life, it is of little or no value to them. As the neighborhood becomes settled, roads are made, the obstructions of navigable waters are removed, the products of their farms are thus placed within the reach of markets, and their lands soon rise to a value which exceeds the original cost and the value of the improvements put upon them. Suppose, then, they are evicted by an old grant, are those men who have conquered the wilderness inch by inch, and borne all the hardships and privations of a frontier settlement, are they to be told that they are speculators, and that there is a rule of morals forbidding them to claim more than they paid? Surely, this cannot be law. The land may have risen higher than the parties contemplated at the time of the sale; but the vendor knew that it was purchased to be improved, and that as the neighborhood became settled, means of communication would be established and the land would rise in value.

It is urged that the increase of value resulting from the natural course of things may be recovered as improvements; this could not be done without express legislation to that effect.

The defendants rely on the case of *Castellano* v. *Peillon*, 2 N. S. 472. That case was decided under the Old Code, and is clearly wrong. Under the provision of that code, the defendant was bound to refund the entire amount of the

<div style="float:right">BURROWS<br>v.<br>PEIRCE.</div>

increased value; and, as the purchaser had sold the slave for a higher price than he gave, the measure of damages against his vendor after eviction was not the price he had paid, but the price he received.·· The vendor was bound to know that the purchaser might sell; and that if he did, he would sell at the highest price he could get.

The question under consideration came before the supreme court in the case of *Bissell and Wife* v. *Erwin's Heirs*, 13 L. R. 147. The district judge in that case had refused to receive the evidence offered by the plaintiff to, prove the increased value of the property at the time of the eviction. The case was remanded, with directions to the district judge to admit it, for the reasons given in the opinion.

The same doctrine was re-considered and affirmed in the case of *Edward et al.* v. *Martin's Heirs*, 19 L. R. 294. In that case a free woman had been sold as a slave in 1802. She did not bring suit for her freedom till 1829; she was then adjudged to be free. While she was held as a slave by the purchaser, she had six children, who were all living when judgment was rendered in her favor. The case was tried before a jury, who assessed the damages of the purchaser against his vendor at $4800, this being the value of the mother and her children. On appeal, the judgment was reversed; and it having been shown that $625, the price paid for the mother, had already been refunded, the court adopted the principle of the law of Justinian: allowed the like sum of $625 as the highest amount of damages which the parties could have in contemplation at the time of the contract.

The only case in the reports which sustains the pretensions of the defendants is that of *Morris* v. *Abat et al.* 9 L. R. 522. It is not out of place to observe, that when the case of *Bissell* and wife was before the Supreme Court, and the opinion delivered by Judge Martin in the case of *Morris* was read, he protested that·he never had made such a decision, and that the case was incorrectly reported, his opinion having always been in accordance with the decision in *Bissell's* case. This was one of the last opinions which the judge wrote with his own hand after he lost his sight, and the reporter gave as an excuse for the inaccuracy of the report, that it was impossible to read it. To please Judge Martin, he made a second attempt at discovering its meaning, and has appended the result of his labors to the report of *Bissell's* case, in 13 L. R. The second reading does not, however, materially differ from the first, and if the judge was right in his recollection, his manuscript opinion still stands undeciphered.

I am well satisfied with the settlement of this difficult question as made by our predecessors, and do not feel justified in assenting to a change of the rule adopted. The plaintiff paid sixty-two dollars and a half for a lot of sixty feet. The lowest estimate put by witnesses upon lots of that size in the same neighborhood at the time of the eviction is two hundred dollars. This is more than double the original price; but I believe justice would be done between the parties by reducing the damages, as was done in the case of *Edwards et al.*