803 So.2d 1048 (2001)
SANSON FOUR RENTALS, L.L.C., Plaintiff,
v.
Lon B. FAULK, Defendant.
No. 35,417-CA.
Court of Appeal of Louisiana, Second Circuit.
December 19, 2001.
*1050 Sam O. Henry, III, Monroe, Counsel for Defendant-Appellant, Kilpatrick Funeral Homes, Inc.
Malcolm Earl Decelle, Jr., Monroe, Counsel for Plaintiff-Appellee, Sanson Four Rentals, L.L.C.
Marshall Leon Sanson, Monroe, Counsel for Third Party Appellee, Marshall Leon Sanson.
Before CARAWAY, PEATROSS and KOSTELKA, JJ.
CARAWAY, J.
This suit involves a $5,000 assignment of a judgment acquired by the plaintiff. The defendant/assignor has now been sued for breach of warranty due to its release of the judicial mortgage from the mortgage records. The release occurred in error after defendant/assignor had made the assignment, and as a result, the judgment debtor was able to sell valuable property unencumbered by the judicial mortgage. The trial court awarded plaintiff the return of the $5,000 price for the assignment, plus damages, and ordered the judgment returned to the defendant/assignor. Finding an eviction and breach of warranty caused by the defendant/assignor's own act, we affirm.

Facts
The disputed judgment arose from Kilpatrick Funeral Homes, Inc.'s ("Kilpatrick") suit on a promissory note against Lon B. Faulk, Sr. ("Faulk") in 1992. The note for $5,309.36 was dated October 27, 1991, and provided for 1½% interest per month and 33 1/3% attorneys fees in the event of collection. A default judgment, dated June 11, 1992 (hereinafter the "Faulk Judgment"), was rendered against Faulk and recorded in the Ouachita Parish mortgage records. The judgment debt remained uncollected by Kilpatrick.
*1051 Faulk owned 2½ acres of land in West Monroe to which the judicial mortgage attached. Marshall Sanson ("Sanson"), an attorney who lives in West Monroe, became interested in the land for investment purposes because of its proximity to the interstate. Sanson and his wife are the members of Sanson Four Rentals, L.L.C. ("Sanson Four"), a company that makes money engaging in real estate transactions. Sanson checked the title to Faulk's land, waited for another mortgage which primed the Faulk Judgment to prescribe, and then contacted Kilpatrick about buying the Faulk Judgment. Kilpatrick's controller, Beth Bostwick ("Bostwick"), agreed to sell the Faulk Judgment for $5,000 cash. On January 23, 1998, Kilpatrick assigned the Faulk Judgment to First Thrift and Loans, L.L.C. ("First Thrift"), another entity controlled by Sanson. On February 10, 1998, First Thrift assigned the Faulk Judgment to Sanson Four. Both assignments described the Faulk Judgment, recited that it was assigned for value received, and each assignment recited that the assignor had not executed any prior assignment, release, discharge or cancellation thereof. Neither assignment contained any specific limitation or disclaimer as to warranty.
On March 2, 1998, Sanson Four instituted suit against Faulk to make the Faulk Judgment executory. On March 11, 1998, the sheriff's office issued a writ of fieri facias for $23,193.04 for the seizure of the 2-½ acre tract in anticipation of the customary sheriff's sale. Notice of the writ of fieri facias was recorded in the mortgage records on March 11, 1998. While the mortgage certificate was being prepared, Sanson learned for the first time that the property had been sold by Faulk to a third party and that the inscription of the Faulk Judgment had been cancelled from the mortgage records of Ouachita Parish.
By Cash Deed dated February 16, 1998, Lon Faulk, a resident of Texas, sold the 2½ acre tract to a third party for $25,000. The deed was recorded on March 2, 1998 while the judicial mortgage of the Faulk Judgment remained an encumbrance upon the property. The cancellation of the Faulk Judgment occurred on March 6, 1998 after Kilpatrick authorized cancellation in a letter signed by Bostwick directed to the Clerk of Court. North Delta Title, the closing agent for Faulk's sale, had prepared the letter for Kilpatrick's signature which stated that the Faulk Judgment "has been paid in full by defendant, Lon B. Faulk." Bostwick presumed that North Delta Title's request for the cancellation letter was made on behalf of First Thrift. Upon receipt of the cancellation letter on March 6, 1998, the Clerk of Court entered a notation on the face of the Faulk Judgment stating that it was paid in full and recorded the cancellation letter.
On November 5, 1998, Sanson amended his petition to add Kilpatrick as a defendant and alleged that Kilpatrick's agent intentionally released a letter authorizing cancellation of the judgment. Sanson prayed for the amount of the Faulk Judgment ($5,309.36) plus accrued interest and attorneys fees provided in the judgment, and for costs. Kilpatrick answered and alleged that Sanson Four was negligent for failing to record its assignment so as to give notice to third parties that Kilpatrick no longer owned the judgment.
Following a bench trial, the trial court rendered judgment in favor of Sanson Four for $15,650.02. This amount represents the face value of the Faulk Judgment, including the 1-½% interest which had accrued in accordance with the underlying promissory note, attorney fees set forth in the note and costs of this action. The $15,650.02 judgment was nevertheless subject to a 20% reduction because of Sanson *1052 Four's contributing fault. Thereafter, the judgment was amended to provide that upon satisfaction of Sanson Four's judgment against Kilpatrick, the Faulk Judgment was to be returned to Kilpatrick.

Discussion

I.
Through two assignments of error, Kilpatrick argues that Sanson's negligence in failing to record the assignments to the two companies, First Thrift and Sanson Four, should be considered the sole cause of the loss, or alternatively, that the trial court's 20% fault assessment against Sanson Four should be increased. Kilpatrick presented testimony by an employee of the Clerk of Court that notations revealing the recorded assignments would have been made on the face of the Faulk Judgment and that Kilpatrick's letter authorizing cancellation would have not been honored by the Clerk of Court. Kilpatrick asserts the application of the second paragraph of Civil Code Article 2500 in support of its argument.
Chapter 15 of the Civil Code provisions on Sale (Title VII) addresses the assignment of incorporeal rights and applies to Kilpatrick's assignment of the Faulk Judgment. The assignor of a right warrants its existence at the time of the assignment. La. C.C. art. 2646. The assignment of a right includes its accessories such as security rights. La. C.C. art. 2645. The assignor warrants the existence not only of the right, but of the accessory securities attached to and transferred with it. Revision Comment (b) to C.C. art. 2646. Citizens' Bank & Trust Co. v. Walker, 9 La. App. 143, 119 So. 487 (1926).
An assignment of right is a species of sale and is treated as such in our Civil Code. Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956); Alco Collections, Inc. v. Poirier, 95-2582 (La.App. 1st Cir.9/27/96), 680 So.2d 735; writ denied, 96-2628 (La.12/13/96), 692 So.2d 1067. The warranty against eviction is implied in every sale. La. C.C. art. 2505. The seller of an incorporeal right does not merely warrant its existence at the time of sale, but warrants also against eviction. Tomlinson v. Thurmon, 189 La. 959, 181 So. 458 (1938). Eviction is the loss suffered by the buyer occasioned by the right or claims of a third person. La. C.C. art. 2500; Huckabay v. Keahey, 600 So.2d 97 (La.App. 2d Cir.1992). A seller is liable for an eviction that is occasioned by his own act. La. C.C. art. 2503.
The buyer is subrogated to the rights in warranty of the seller against other persons. La. C.C. art. 2503. Subrogation means that the buyer "stands in the shoes" of his seller and can enforce any warranty rights which his seller had against prior sellers in the chain of title. Litvinoff, Sale and Lease in the Louisiana Jurisprudence, Paul M. Hebert Law Center Publications Institute, 1986, Notes, pp. 363-364; Carpenter v. Herndon, 173 La. 239, 136 So. 577 (1931).
From the above principles of our law, Kilpatrick's assignment of the Faulk Judgment included as an accessory, the judicial mortgage affecting Faulk's land in Ouachita Parish. The judicial mortgage arose following the recordation of the Faulk Judgment in the mortgage records. Kilpatrick's assignment of right included the warranty against any eviction that might be occasioned by an action of Kilpatrick. Kilpatrick's warranty which was initially made to First Thrift may be asserted by Sanson Four because of the right of subrogation.
The eviction in this case occurred when Faulk obtained the letter from Kilpatrick authorizing the Clerk of Court to cancel Sanson Four's judicial mortgage from the mortgage records and Faulk sold the property unencumbered by the Faulk *1053 Judgment. Faulk's eviction of Sanson Four's right to the judicial mortgage, which was occasioned by Kilpatrick's own act, is similar to the situation where a vendor sells the same property twice causing the eviction of the first vendee who fails to record his title. The fact that a purchaser fails to record the act of sale does not release the seller from its obligation to warrant title. See, Clark v. O'Neal, 13 La. Ann. 381 (1858); Whitten v. Monkhouse, 29 So.2d 800 (La.App. 2d Cir. 1947), modified on other grounds, 213 La. 651, 35 So.2d 418 (1948).
In Whitten v. Monkhouse, plaintiff acquired title to two lots but never recorded the deed. The lots were subsequently adjudicated for nonpayment of taxes. More than ten years later, plaintiff's vendor (who was also the defendant in the action) sold the same property to a third party. The second deed was recorded. When plaintiff discovered his eviction from the property, he instituted suit against his vendor. In finding a breach of warranty, the court wrote as follows:
Unquestionably the negligence, carelessness and laches of plaintiff in failing to seasonably record his deed to the property is responsible for the predicament in which he finds himself. But, while such laches might be a valid defense on the part of third parties, it cannot be interposed by the vendor of property, who, by his own act, has been guilty of depriving plaintiff of title thereto. We know of no theory under which a man, who sells the same property to different parties, can or should be protected against the consequence of his own ill-advised acts. While in the instant case there is no evidence of any intentional fraud on the part of this defendant, it is indisputable that nonetheless he, and he alone, has committed the offense of making two sales of the same property to two different parties....
Id., 29 So.2d 800, 803.
The second paragraph of Civil Code Article 2500, upon which Kilpatrick relies, states that "[i]f the right of the third person is perfected only after the sale through the negligence of the buyer, though it arises from facts that took place before, the buyer has no claim in warranty." The source for this provision is former Civil Code (1870) Article 2502.[1] The former Article was applied in Deas v. Lane, 202 La. 933, 13 So.2d 270 (1943) to hold that the seller of a mineral servitude did not warrant that the servitude would not be subsequently lost in less than ten years by the running of the prescription of non-use. However short the remaining period of prescription at the time of sale of the servitude, the purchaser's failure to use the servitude thereafter caused the right of the third party/landowner to claim the extinguishment of the servitude, resulting in the purchaser's loss of the servitude.
As seen by the above contrasting jurisprudence, the failure of the vendee to record his instrument of title has not been considered negligence under former Article 2502 (now Article 2500). This is because, as between the parties to the sale, no recordation is necessary, and the vendor may not by his own action allow the vendee's right to be defeated by selling the property a second time. Such action by the vendor has been considered a breach of warranty because the eviction by the third party resulting from the application of the public records doctrine is only occasioned by the vendor's second act in violation *1054 of the warranty of the first sale. Here, the second act of Kilpatrick was releasing the judicial mortgage through its letter to the Clerk of Court. This effectively defeated Sanson Four's right to its accessory judicial mortgage. We find this act by Kilpatrick to be a breach of warranty governed by Article 2503, which specifically prohibits a later act by the vendor that defeats the vendee's rights in the object of the sale. Sanson Four's failure to record the acts of assignment in this case is not "negligence of the buyer" under Article 2500.
Accordingly, Kilpatrick's assignments of error are without merit. Sanson Four's failure to answer the appeal, however, requires that the trial court's reduction of Sanson Four's award by 20% for its negligence may not be deleted from the judgment. La. C.C.P. art. 2133; Hill v. Cloud, 26,391 (La.App.2d Cir.1/25/95), 648 So.2d 1383.

II.
Kilpatrick's remaining assignments of error pertain to Sanson Four's remedy and the trial court's measure of damages. Kilpatrick first argues that the Faulk Judgment remains a viable judgment despite the cancellation of the judicial mortgage. The Faulk Judgment was in fact refiled in the mortgage records, albeit after Faulk's sale of the property. Alternatively, if Sanson Four shows that it suffered a loss, Kilpatrick insists that Sanson Four is entitled only to the return of the $5,000 price it paid for the assignment.
Kilpatrick's position stems from the fact that the eviction which Sanson Four suffered was only a partial eviction of the accessory right of the judicial mortgage. In cases of partial eviction, La. C.C. art. 2511 provides as follows:
When the buyer is evicted from only a part of the thing sold, he may obtain rescission of the sale if he would not have bought the thing without that part. If the sale is not rescinded, the buyer is entitled to a diminution of the price in the proportion that the value of the part lost bears to the value of the whole at the time of the sale.
The evidence indicates that at the time of Kilpatrick's assignment, the Faulk Judgment debt had remained uncollected for over six years. Faulk resided out of state. The face value of the judgment, including the interest which had accrued and the attorney's fees allowance provided in the original promissory note, was approximately $15,000. Nevertheless, Kilpatrick sold the Faulk Judgment for only $5,000, apparently unaware that 2-½ acres in Ouachita Parish owned by Faulk was encumbered by the judicial mortgage. Sanson testified that the 2-½ acre tract was worth more than the face value of the Faulk Judgment. This testimony is supported by Faulk's sale of the property for $25,000 which occurred within weeks after Kilpatrick's assignment of the note. This evidence proves, circumstantially, Kilpatrick's inability to enforce the judgment against Faulk personally, for any of his assets unaffected by the judicial mortgage. From that strong inference and Sanson's testimony, the trial court could reasonably conclude that First Thrift and Sanson Four would not have bought the Faulk Judgment without the judicial mortgage lien affecting the 2-½ acres. The loss of that accessory right occasioned by Kilpatrick's act of release was a partial eviction which allowed the court to award total rescission of the assignment under Article 2511 and the return of the Faulk Judgment to Kilpatrick.
Having determined that rescission for the partial eviction is appropriate, the issue of Sanson Four's entitlement to damages over and above the purchase price of $5,000 becomes a matter of interpretation *1055 of various Civil Code articles regarding eviction, particularly Articles 2503,[2] 2506,[3] and 2511. From these articles it is seen that whether the warranty against eviction is expressed in the sale, implied by law, or excluded by provisions in the sale agreement, the remedy of rescission of the sale and the return of the price to the buyer is the primary remedy in the event of eviction. Three exceptions to this rule are contained in the second sentence of Article 2503. Likewise, the primary remedy of rescission of the sale and return of the purchase price is also possible in the case of a partial eviction, as present here, pursuant to Article 2511.
Upon the rescission of the sale, the issue of damages over and beyond the returned purchase price has been historically a topic of special concern to the early redactors of the Civil Code, the courts, and the commentators. See, Bissell v. Erwin's Heirs, 13 La. 143 (1839); Burrows v. Peirce, 6 La.Ann. 297 (1851); and J. Denson Smith, Recovery of Damages for Non-Delivery and Eviction in LouisianaA Comparison, 17 La.L.Rev. 253 (1957).
Rejecting Article 1633 of the Code Napoleon, the redactors of the Civil Code of 1825 refused to allow eviction damages to be measured by the increase in the value of the sold object from the time of the sale to the date of eviction. 1 Louisiana Legal Archives, Project of the Civil Code of 1925, 307 (1937). The reason for the rejection of french Article 1633 was because the "fluctuations in value are so great" in this country. Id. Nevertheless, the substance of present Article 2506 was included in the Code of 1825 as Article 2482, providing that the evicted purchaser could receive, in addition to the return of the purchase price, damages, "when he has suffered any, besides the price that he had paid." West's LSA Civil Code, 1972 Compiled Edition. The 1993 revision of Article 2506 repeats the substance of Article 2482 of the Code of 1825 and Article 2506 of the Code of 1870, with the return of the price and damages as clearly two separate items of recovery. Nevertheless, the allowance for damages in the new Article 2506 is now expressed as all "other damages," "with the exception of any increase in value of the thing lost." For understanding the measure of "damages" for conventional obligations, Article 1995 provides that "[d]amages are measured by the loss sustained by the obligee and the profit of which he has been deprived."
In his thorough and excellent review in the Louisiana Law Review, Professor J. Denson Smith compared the damages recoverable for breach of warranty against eviction with similar damages the purchaser might seek under a contract to sell upon non-performance by the seller. After tracing the history discussed above regarding the rejection of french Article 1633, Professor Smith criticized the early and conflicting *1056 opinions of the Louisiana Supreme Court and stated:
But, granting that an evicted vendee should not be allowed to recover on the basis of the enhanced value of the property at the time of eviction, to restrict his recovery to a return of the purchase price, where there is an established difference between purchase price and market value at the time performance is due, is out of harmony with the general principles established by the Code and recognized by the jurisprudence. When a seller fails to fulfill his obligation to make delivery of that which he has sold, whether movable or immovable, the vendee is entitled to, and is given, the benefit of his bargain. If he can prove that the market value was greater than the contract price, the difference constitutes a gain on the transaction of which he is deprived by the breach.

Smith, supra, 17 La.L.Rev. at 270 (emphasis supplied).
There is a clear distinction between (i) an unforeseeable "increase in the value of the thing lost" by eviction that occurs after the date of sale and (ii) the difference between a bargain or discounted price that the purchaser pays and the actual value of the object on the date of sale. The former is now expressly excluded as an item of damages under Article 2506 in keeping with the original implication from our Code of 1825. The latter is an expression of the general measure of damages that a purchaser may suffer as the result of an eviction that results in the rescission of the sale. It parallels exactly the amount of damages or "profit" under Article 1995 for the similar breach caused by the seller's non-performance of a contract to sell, as expressed in Friedman Iron & Supply Co. v. J.B. Beaird Co., 222 La. 627, 63 So.2d 144, 149 (1952):
It is presumed, in the sale of personal property, that the parties contemplated the difference between the contract price of the thing sold and the market value at the time and place at which it was to be delivered when they entered into the contract. [citation omitted.] This court has on numerous occasions pointed out that the measure of damages for the breach of a contract of sale, where no fraud is shown, is the difference between the contract price and the market price of the goods on the date of the breach.

In this case, the warranty against eviction was breached and the trial court rescinded the sale and effectively returned the price of $5,000 to Sanson Four plus additional damages. Sanson Four proved that it was also damaged because the value of the Faulk Judgment when secured by the judicial mortgage over the 2-½ acre tract, was well in excess of the discounted price ($5,000) and could be expected to return to Sanson Four the total amount of the judgment on the date of Kilpatrick's assignment. Therefore, the trial court's award of damages in the excess of the price up to the maximum amount that one could collect under the Faulk Judgment was appropriate.

Conclusion
For the foregoing reasons, the judgment of the trial court rescinding the assignment of the Faulk Judgment and awarding damages to Sanson Four is affirmed. Costs are assessed to appellant.
AFFIRMED.
NOTES
[1] Former Article 2502 states: That the warranty should have existence, it is necessary that the right of the person evicting shall have existed before the sale. If, therefore, this right before the sale was only imperfect, and is afterwards perfected by the negligence of the buyer, he has no claim for warranty.
[2] La. C.C. art. 2503 provides, in pertinent part:

The warranty against eviction is implied in every sale. Nevertheless, the parties may agree to increase or to limit the warranty. They may also agree to an exclusion of the warranty, but even in that case the seller must return the price to the buyer if eviction occurs, unless it is clear that the buyer was aware of the danger of eviction, or the buyer has declared that he was buying at his peril and risk, or the seller's obligation of returning the price has been expressly excluded. In all those cases the seller is liable for an eviction that is occasioned by his own act, and any agreement to the contrary is null.
[3] La. C.C. art. 2506 provides:

A buyer who avails himself of the warranty against eviction may recover from the seller the price he paid, the value of any fruits he had to return to the third person who evicted him, and also other damages sustained because of the eviction with the exception of any increase in value of the thing lost.