228 So.2d 53 (1969)
Oliver PARNELL
v.
Claude E. BAHAM, Clay-Dutton, Inc., Lumbermen's Mutual Insurance Company and the Travelers Insurance Company.
No. 3633.
Court of Appeal of Louisiana, Fourth Circuit.
November 3, 1969.
Rehearing Denied December 1, 1969.
Writ Refused January 20, 1970.
*54 Frank J. D'Amico and Robert J. Stamps, New Orleans, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Pat W. Browne, Jr., John C. Combe, Jr., New Orleans, for Travelers Ins. Co., defendant-appellant.
Before REDMANN, BARNETTE, and LE SUEUR, JJ.
BARNETTE, Judge.
Plaintiff instituted suit seeking recovery of damages on account of personal injuries and property damage sustained as the result of a collision of his motorcycle with an automobile driven by Stanley Johnson on February 19, 1965, at the intersection of Fourth and Roberson Streets in the town of Marrero, Louisiana.
Plaintiff alleged that the automobile operated by Johnson was owned by Claude E. Baham and was insured for public liability by Lumbermen's Mutual Insurance Company. In the alternative, he alleged that in the event the automobile did not belong to Baham, it belonged to Clay-Dutton, Inc., and was insured for public liability by The Travelers Insurance Company.
Defendants Baham and Lumbermen's Mutual Insurance Company answered, denied liability and alleged that the automobile involved in the accident was sold to Clay-Dutton, Inc., on February 1, 1965. On joint motion of counsel, suit was dismissed against these defendants on December 21, 1966. They have no further interest in these proceedings.
Defendants Clay-Dutton, Inc., and The Travelers Insurance Company (Travelers) answered and alleged that the automobile was not owned by Clay-Dutton, Inc., at the time of the accident, but had been sold by Clay-Dutton to Clifton LeBlanc, doing business as Car Town Motors, on February 16, 1965. A subsequent motion for summary judgment by Clay-Dutton and Travelers was denied, and after trial on the merits, judgment was rendered in favor of plaintiff against Travelers for the sum of $33,834.08. There was no mention of defendant Clay-Dutton in the judgment although the trial court in its reasons for judgment indicates that defendant should not be cast. The Travelers Insurance Company has appealed suspensively.
In its appeal to this court Travelers does not contest the holding of the lower court that Stanley Johnson was guilty of negligence proximately causing plaintiff's injuries, and that plaintiff was free of contributory negligence. Travelers does contest, however, the finding by the trial court that at the time of the accident the automobile driven by Johnson was owned by Clay-Dutton and hence was within the coverage of its public liability insurance policy. In the alternative, and contingent upon this court's affirming the lower court judgment, Travelers seeks a reduction in the quantum of damages awarded to plaintiff, which it asserts is excessive.
Facts which are not disputed are that on or about February 16, 1965, Clifton LeBlanc, doing business as Car Town Motors, went to the Clay-Dutton used car lot on Veterans Highway to obtain a number of used cars. At this location he and Joseph R. Cannatella, the manager of the Clay-Dutton lot, looked over the automobiles which were for sale, and LeBlanc selected 12 vehicles, one of which was the automobile involved in the accident. Cannatella and LeBlanc agreed upon a specific price for each of the automobiles and further agreed that Clay-Dutton would bill LeBlanc by invoice at the end of the month. The total price of the 12 used cars was $3,100. LeBlanc took possession of the automobiles and removed them from the Clay-Dutton lot on Veterans Highway to his own lot on the West Bank Expressway in Jefferson *55 Parish. The vehicle in question remained on the Car Town Motors lot until the date of the accident. Stanley Johnson, an employee of Car Town Motors, used the automobile as directed by LeBlanc and was returning from an errand for LeBlanc when the accident occurred.
Plaintiff contends that ownership of the vehicle had not passed from Clay-Dutton to Car Town Motors because payment had not been made at the time of the accident and Clay-Dutton had not transferred the certificate of title to LeBlanc. More specifically, plaintiff argues that the agreement between the parties on February 16 was for a cash sale; that payment of the purchase price was a condition upon which the transfer of ownership depended; and that until payment was made the sale was suspended. He relies principally on the authority of Packard Florida Motors Co. v. Malone, 208 La. 1058, 24 So.2d 75 (1945).
The crucial question we must determine is whether the transaction between Clay-Dutton and LeBlanc on February 16, 1965, by which LeBlanc took possession of the 12 automobiles was a sale translative of ownership. If the offending automobile was still owned by Clay-Dutton on February 19, it was within the coverage of Travelers' liability insurance on its automobiles. Travelers, in that event, assuming there was no applicable exclusionary clause to the contrary, would be liable for plaintiff's damages, for all other elements of liability are proven or conceded.
The trial judge, with written reasons, held that ownership had not been transferred to LeBlanc and therefore the automobile remained under Travelers' liability coverage. He held "the sale was to be a cash transaction"; that it was the intent of the parties that there be no sale until payment; that payment of the agreed price was therefore an essential element or condition of the sale; and that the sale was suspended until payment was received on March 5. He held that the sale was subject to the suspensive condition of payment and hence governed by LSA-C.C. art. 2471, which provides in pertinent part as follows:
"A sale, made with a suspensive condition, does not transfer the property to the buyer, until the fulfillment of the condition."
The basis for his conclusion was a factual finding that the contract on February 16 was "an agreement to sell a specific number of used automobiles for cash," and that "the ownership of the vehicles was to have been transferred simultaneously with the act of payment." He held that delivery of the automobiles to LeBlanc prior to payment was in fact "an accommodation in anticipation of the perfection of the cash sale in accordance with the intent of the parties." He took cognizance of the holding in Transportation Equipment Co. v. Dabdoub, 69 So.2d 640 (La.App. Orleans 1954), to the effect that as between the parties the sale is complete even though the certificate of title has not been delivered, but found it not applicable to the facts in this case. But apparently he considered the withholding of the certificate of title by Clay-Dutton to be evidence of the intent of the parties that the sale be suspended pending payment.
LSA-C.C. art. 2456 provides as follows:
"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid."
The trial judge reasoned that this article must be read in connection with LSA-C.C. art. 2471, supra, and LSA-C.C. art. 2020, which is as follows:
"Simple obligations are such as are not dependent for their execution on any event provided for by the parties, and which are not agreed to become void, on the happening of any such event." *56 Finally, he cited as a controlling authority Packard Florida Motors Co. v. Malone, supra.
When there is agreement as to the object and price, and delivery, to make the payment of price a suspensive condition of the sale is nothing more than an application of the concept of "conditional sales" whereby the seller retains ownership until the price is paid. This concept was clearly rejected by our Supreme Court in Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193 (1908), as not being possible under our law. The Court said:
"The reason why a sale under a suspensive condition does not transfer the ownership is that it is not a sale. If it was a sale, it would transfer the ownership; because a sale is a transfer of ownership, and it is nothing else. * * *" 46 So. at 197.
See also Roy O. Martin Lumber Co. v. Sinclair, 220 La. 226, 56 So.2d 240 (1951), and Givens v. Southern Farm Bureau Casualty Ins. Co., 197 So.2d 380 (La.App. 2d Cir. 1967).
In Givens the court said:
"The rule is well established in the jurisprudence of this State that where all the essential elements and conditions for an absolute sale are present in a contract between parties, the effects following legally from that particular contract follow whether the parties foresaw and intended them or not, and though they may refer to the contract as a conditional sale. Thomas v. Philip Werlein, Limited, 181 La. 104, 158 So. 635 (1935); W. T. Adams Mach. Co. v. Newman, 107 La. 702, 32 So. 38 (1902); State ex rel. Bulkley v. Whited & Wheless, 104 La. 125, 28 So. 922 (1900).
"Thus, where an act of sale of movables consummated in Louisiana stipulates that title will not pass until the price has been paid, that condition is without effect and title passes subject to the seller's vendor's lien and chattel mortgage, if any, securing the deferred part of the purchase price. Roy O. Martin Lumber Co. v. Sinclair, 220 La. 226, 56 So.2d 240 (1951); Remington Rand v. Boliew (La. App.) 131 So.2d 835 (2d Cir. 1961); Standard Chevrolet Co. v. Federal H. & I. Mutuals (La.App.) 178 So. 642 (2d Cir. 1937)." 197 So.2d at 382.
We think undue significance was given to the testimony of Louis H. Clay, Jr., a managing official of Clay-Dutton, Inc., wherein he referred to the transaction as a "cash sale" and that payment was not received until March 5.
We have carefully reviewed Clay's complete testimony as well as that of LeBlanc and the Cannatella brothers, all of whom were witnesses concerning the alleged sale. We find a remarkable similarity in their testimony in certain particulars to the testimony quoted by the court in Westbrook v. Blakewell, 126 So.2d 44 (La.App. 1st Cir. 1960), at pp. 47-49, and are convinced that the same conclusion should be reached in this case.
It is a matter of common knowledge that new car agencies take in used cars to apply on the purchase price of new automobiles. They frequently sell several used cars in a block to dealers who specialize in the purchase and sale of used cars. This is what is known in the trade as "wholesaling." The testimony in this case leaves no doubt that this was the nature of the transaction between Clay-Dutton and LeBlanc, doing business as Car Town Motors.
It is true that Clay referred to the transaction as a "cash sale," but such reference cannot make it so. It is for the court to determine the legal character of the transaction from all the facts. The significant fact is that he (Clay), LeBlanc, and the other witnesses referred to the transaction repeatedly as a sale. There was no mention of a contract to sell or agreement to buy. If it was, as they obviously intended, a sale, it is of no consequence *57 what character of sale they might have supposed it to be. Givens v. Southern Farm Bureau Casualty Ins. Co., supra.
The certificates of title for each of the 12 automobiles were held by Clay-Dutton pending payment. LeBlanc testified that if he had a sale for one or more of the automobiles he would pay the respective price for each such automobile to get the certificate of title from Clay-Dutton to pass on to his purchaser. He was questioned if he would be required to return the automobiles to Clay-Dutton if payment was not made upon being billed. He said this had never occurred between him and Clay-Dutton; that he had always paid; and that they never repossessed any car sold to him.
We are convinced that the retention of the certificates of title by Clay-Dutton was its method of securing the obligation of payment and did not affect the transfer of ownership between the parties nor the resale and transfer of ownership from LeBlanc to a third person. Transportation Equipment Co. v. Dabdoub, supra. Clay-Dutton was interested only in the payment of $3,100 for the 12 automobiles. The reason for a breakdown to a specific price for each unit was to insure that one or more certificates of title could be obtained by LeBlanc as necessary upon payment of a prior agreed sum.
In every sale, the seller expects to receive payment for the thing sold, so if appellee's argument is valid, every sale may be said to contain a suspensive condition of payment of the price. A "cash sale" contemplates the concurrence of the payment with delivery and the transfer of ownership. In re Union Central Life Ins. Co., 208 La. 253, 23 So.2d 63 (1945); 77 C.J.S. Sales § 234, p. 1005. When delivery is made and ownership transferred by the seller to the purchaser upon an agreement that the purchaser will pay laterwhether it be hours, days, or longerit is a credit sale. The seller parts with his goods upon the promise of the purchaser to pay. Upon failure of payment the seller may resort to the remedies provided by law, but this does not transform that which was a sale into a contract to sell, or a loan or lease or bailment (deposit) or other transaction non-translative of ownership.
There can be no doubt that in this case the seller and the purchaser each understood the unconditional character of the sale and that ownership was vested in LeBlanc immediately. They each understood that resale by LeBlanc was not a condition of payment and that he was unconditionally bound in any event to pay $3,100. As a matter of fact he did pay the full amount on March 5, after being invoiced, in keeping with the agreement. Clearly, it was a credit sale made in reliance upon the integrity of the parties in keeping with an established practice between them.
The only basis upon which the judgment of the trial court could be sustained would be its finding that the February 16 transaction was "an agreement to sell * * * for cash." But this finding is clouded by his reference to the transaction as a "sale" with a suspensive condition subject to the articles of the Code relative to sales. It must have been one or the other; it could not have been a "sale" and a "contract to sell" simultaneously. The testimony clearly reveals, in our opinion, that the parties intended to and did in fact negotiate a sale. Their agreement embraced a concurrence of the thing sold, the price and the consent. LSA-C.C. art. 2439.
The conclusion we have reached finds ample support in the jurisprudence of our State and particularly, in addition to the cases cited above, the following: Flatte v. Nichols, 233 La. 171, 96 So.2d 477 (1957); Jeffrey Motor Company v. Higgins, 230 La. 857, 89 So.2d 369 (1956); Ward v. Parker, 151 So.2d 108 (La.App. 1st Cir. 1963).
The Flatte case involved the question of passage of ownership of an automobile allegedly sold to a dealer in Mississippi and thereafter sold to the defendant Nichols in Louisiana. The Mississippi used car dealer allegedly purchased the Cadillac from *58 Flatte, a Texas dealer, for "cash." An invoice given by the seller, Flatte, specifically stated that the sale was for "cash" and that there were no notes or conditional sales contracts held by anyone. A check given by the Mississippi dealer to Flatte in payment concurrent with delivery was not paid by the drawee bank on account of insufficient funds. Flatte sought recovery of the automobile or its value on the contention that the payment of the check was a condition of the sale, and since the condition failed, there was no transfer of ownership. The Court held this was a "credit sale" and title passed, citing Jeffrey Motor Company v. Higgins, supra.
In the Jeffrey case the Court held that the acceptance of a draft by the seller's agent in lieu of cash, the acceptance being ratified by the seller, was a complete sale, the nonpayment of the draft notwithstanding. In effect the Court held that the acceptance of the draft converted the intended cash transaction into a credit sale.
In both Flatte and Jeffrey, the Supreme Court took cognizance of its opinion in Packard Florida Motors Co. v. Malone, supra, and said in Flatte that it was inapplicable because in that case the automobile was actually stolen. That case is equally distinguishable and therefore inapplicable to the one presently before us. In Packard Florida the element of "consent" required by LSA-C.C. art. 2439 was wanting because of the intentionally fraudulent scheme by which the possession of the automobile was obtained.
The present case differs from Flatte, Jeffrey, and Florida Packard in that in spite of later references to a "cash sale" there was never any intention between the parties that payment be made concurrently with delivery. It was from the beginning a credit sale.
The appellee relies on Jackson Motors, Inc. v. Calvert Fire Insurance Company, 239 La. 921, 120 So.2d 478 (1960), and Kershaw v. Deshotel, 179 So.2d 528 (La.App. 3d Cir. 1965). In both of these cases the courts applied LSA-C.C. art. 2471. The suspensive condition in each of those cases was a specific requirement, other than payment of price, which was not satisfied before the occurrence of an event which precipitated a suit involving the question of ownership. In each case the courts held that ownership did not pass to the intended purchaser. We do not find the principle of law invoked in those cases to be applicable to the facts presented in this case.
For the foregoing reasons the judgment in favor of Oliver Parnell against The Travelers Insurance Company is reversed and judgment is now rendered in favor of The Travelers Insurance Company rejecting plaintiff's demands and dismissing his petition at plaintiff-appellee's costs.
Reversed.