SARTAIN, Judge.
This is an appeal by Alvin Griffin from an adverse judgment in the district court which dismissed Griffin’s claims against Hayman Pitre and awarded judgment in favor of Hayman Pitre in the amount of $500.00 on his reconventional demand.
This controversy arose out of the alleged sale of a quarter horse by Hayman Pitre to appellant, Alvin Griffin, in October of 1969. The record reflects that Hayman Pitre purchased the quarter horse, called “Lady”, at an auction for $500.00 and for some time thereafter allowed the horse to roam free in a pasture behind the Pitre home. During September of 1969 Mr. Pitre was approached by a Mr. Wallace Smith who inquired into the prospect of purchasing the horse from Pitre. Smith went into the pasture and caught the horse but no sale was made because Pitre remembered having previously promised Alvin Griffin the first chance to purchase the horse. Smith testified that he left the country shortly after his discussions with Pitre about the horse and did not return until June of 1970. In October of 1969 Griffin allegedly purchased the horse for a price of $500.00. Payment was to be $300.00 down with the remainder to be paid in installments. Griffin took possession of the horse and “Lady” has remained in his possession since that time.
Alvin Griffin testified that on January 4, 1970, he went to Pitre’s home and offered him a check for $300.00 representing the down payment on the horse. Griffin stated that while there on January 4, 1970, he was introduced to a Dr. Donald Ayo by Mr. Pitre. According to (Griffin, Mr. Pitre refused to accept the down payment and a new agreement was entered into under the terms of which Griffin was to retain possession of the horse, feed and care for it, and train it for racing and Pitre was to pay him for these services. Griffin stated that he tried several times to collect for his services but Pitre .refused to pay him. Finally, on March 18, 1971, Griffin filed suit seeking payment for stall space, feed, medicine, and training of the horse.
*811 Hayman Pitre testified that “Lady” was sold to Alvin Griffin in October of 1969 and after that sale the horse belonged to Girffin. He denied that Griffin’s alleged tender of the down payment ever took place. Pitre’s wife testified concerning one attempt by her to get the $500.00 purchase price from Griffin. Pitre stated that he received a couple of bills from Griffin but refused to pay them because the horse was no longer his. Pitre filed an answer denying Griffin’s claims and a reconven-tional demand in this suit seeking recovery of $700.00 from Griffin, which amount was alleged to represent the sale price of the horse and a saddle.
The trial court rendered judgment dismissing Griffin’s claims and granting Pitre recovery of $500.00 as the sale price of the horse, from which judgment appellant-Griffin perfects this appeal.
The issues to be resolved are (1) whether or not there was a valid and binding-sale of the horse by Pitre to Griffin, and (2) whether there was a rescission of this sale and the formation of a new agreement between the parties.
While we are not favored with either written or oral reasons for judgment by the trial court, it is apparent that the trial judge determined that a valid and binding sale of the horse occurred. Our review of the testimony in the record convinces us of the correctness of this determination by the judge a quo.
As provided in C.C. Article 2439, the three requisites of a valid sale are the thing sold, the price and consent. C.C. Article 2456 further provides as follows :
“The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid.”
In accordance with these provisions it has been held that where there is an absolute agreement to purchase and sell for a fixed price and the property is delivered to the buyer, the sale is deemed complete. Roy O. Martin Lumber Co. v. Sinclair, 220 La. 226, 56 So.2d 240 (1951).
In the case at bar the testimony of both the seller, Mr. Pitre, and the buyer, Mr. Griffin, clearly indicates that a binding sale of the horse was perfected between them. Mr. Pitre testified concerning the sale as follows :
“Q. When you and Mr. Griffin were discussing the sale of the horse did you agree with him that you would sell him this particular horse?
A. Yes.
Q. How much did you tell him that you wanted for the horse?
A. $500.
Q. Did he tell you that he would buy the horse for $500.00 ? ■
A. Yes.
Q. Were there any other conditions to the sale?
A. None. There was none at all.”
Mr. Griffin testified concerning the sale as follows:
“Q. Going back to your original testimony concerning your first encounters with the horse, when you and Mr. Pitre were discussing the buying or the selling of the horse, you both identified the horse that was going to be sold and the horse that was going to be bought ?
A. Yes. Lady.
Q. There was no dispute on which animal was going to be sold ?
A. No, there wasn’t.
*812 Q. Did you all agree upon a price for the horse?
A. Yes, we did.
Q. What price was that ?
A. $500 for the horse. $300 when I took it, and $200 after.
Q. Did you agree with Mr. Pitre that you would take that particular animal for that particular price ?
A. That’s right.
Q. And your testimony just stated that you were going to give him $300 at that time and $200 later ?
A. That’s right.
Q. When did you purchase the horse?
A. October 28, 1969.”
It is apparent from the above quoted testimony that on October 28, 1969 Griffin and Pitre agreed to the purchase and sale of this quarter horse for a fixed price and the horse was delivered to the buyer thereby completing the sale.
Appellant alleges error on the part of the trial court in holding this a completed sale and asserts that this transaction was a credit sale subject to the condition of Griffin paying the price and Pitre accepting the same when it was tendered. Thus, appellant contends that since the condition of payment was never fulfilled no sale, upon which the trial court could have based its judgment compelling Griffin to pay the purchase price, ever occurred. We find no merit in this contention.
As pointed out by our brothers of the Fourth Circuit in the case of Parnell v. Baham, 228 So.2d 53 (4th La.App.1969), writs refused 255 La. 242, 230 So.2d 92 (1970):
“When there is agreement as to the object and price, and delivery, to make the payment of price a suspensive condition of the sale is nothing more than an application of the concept of ‘conditional sales’ whereby the seller retains ownership until the price is paid. This concept was clearly rejected by our Supreme Court in Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193 (1908), as not being possible under our law.” (228 So.2d at 56).
The court in Parnell went on to state that even if the transaction between the parties is classed as a “credit sale”, in which the owner parts with his goods upon the promise of the buyer to pay at a later time, this transaction is still a completed sale transla-tive of ownership to the buyer, notwithstanding the failure of the buyer to pay the purchase price.
Therefore, we conclude that the trial judge was correct in finding a valid and binding sale of this horse to Griffin.
As to the second issue presented by this appeal, appellant contends that the trial court erred in failing to find that the sale of the horse was rescinded as of January 4, 1970 and that a new agreement was made between Pitre, and Griffin for the care and training of the horse. This issue is primarily a factual one and concerns the alleged meeting between Pitre and Griffin on January 4, 1970.
Appellant-Griffin testified that he made out a check in the amount of $300.00 and went to Pitre’s home on January 4, 1970 in order to deliver this check to Pitre as the down payment on the horse. He stated that when he arrived at Pitre’s house several other persons were present and he was introduced by Pitre to a Dr. Donald Ayo. Griffin stated that he and Pitre went outside where Pitre told him that he no longer wanted to go through with the sale and refused to accept Griffin’s check. Griffin testified that Pitre’s son, Mike Pitre, was present and stated that he wanted his father to keep the horse. Griffin further testified that he and Pitre then agreed that he should keep the horse and that Pitre would pay him for his services in training and caring for the horse. Griffin kept the horse and stated that he saw Pitre several *813 months later at which time Pitre was asked to pay for Griffin’s services but Pitre refused to do so. Griffin continued to keep the horse and during the next year he sent Pitre two bills for his services. Pitre never paid the bills and finally Griffin filed this suit.
Hayman Pitre testified that Griffin never came to his house on January 4, 1970 and that he never discussed any arrangement with Griffin whereby Griffin would care for and train the horse for him. Pitre stated that he did receive the bills from Griffin but did not pay them because he felt that the horse belonged to Griffin. He testified that on one occasion he had his wife call Griffin and request payment of the $500.00 purchase price. Pitre stated that it was his understanding that the horse was sold to Griffin in October of 1969.
Mike Pitre, defendant’s son, testified that he was not present at the alleged meeting between his father and Griffin. He stated that he never requested his father to get the horse back and that he never told Griffin that he wanted to keep the horse.
Mrs. Hayman Pitre testified that she does not recall Griffin coming to her house on January 4, 1970. She stated that the only occasion she can recall Griffin coming to the Pitre home, after her husband sold him the horse, was when he came to borrow a saddle one day while her husband was not there. She let Griffin borrow the saddle. Mrs. Pitre further testified that she called Griffin on instructions from her husband and asked Griffin about paying for the horse. She stated that Griffin told her he would not pay Mr. Pitre until Mr. Pitre paid him.
Dr. Donald Ayo testified that he did not recall meeting Mr. Griffin in the Pitre home on January 4, 1970.
Mr. Wallace Smith testified that when he returned to the area in the summer of 1970 he saw the horse at Mr. Griffin’s stable and inquired if the horse was for sale. He stated that Griffin told him the horse belonged to Mr. Pitre. Smith testified that he then asked Pitre about the horse and Pitre offered to sell it to him in July of 1970. Smith stated that no price was mentioned and when he talked to Griffin again he was told that the horse was not leaving the stable until the bill was paid. Smith further testified that after Griffin told him the amount of the alleged bill he was no longer interested in purchasing the horse.
Hayman Pitre denies ever talking to Smith about the horse after Smith’s initial inquiry in the fall of 1969 prior to the sale of the horse to Griffin.
The trial court obviously believed and accepted the testimony of Pitre and his witnesses to the effect that the alleged meeting between Pitre and Griffin on January 4, 1970, never took place and the October 28, 1969, sale was never rescinded in favor of any other agreement between the parties.
It is well settled that factual conclusions of the trial court, particularly when based upon an evaluation of the credibility of witnesses and the truthfulness and reasonableness of their testimony, should not be overturned except upon a clear showing of manifest error. Satterwhite v. Zurich Insurance Company, 199 So.2d 429 (1st La.App.1967); Readco Industries, Inc. v. Myrmax Specialties, Inc., 236 So.2d 573 (1st La.App.1970), writ refused 256 La. 865, 239 So.2d 362 (1970).
Our review of this record discloses no manifest error on the part of the judge a quo in accepting, instead of appellant-Griffin’s testimony, the testimony of Pitre and his witnesses concerning the alleged rescission of the sale and formation of a new agreement between the parties.
Therefore, for the above reasons, the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.