United States Court of Appeals
Fifth Circuit

**F I L E D**

July 8, 2003

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-30395


In the Matter of: ARGO FINANCIAL, INC.,

Debtor.


ADVANTA AUTO FINANCE CORPORATION,

Appellant,


VERSUS


SUGARLAND MOTOR COMPANY, INC., doing business as Harvest Ford-
Lincoln-Mercury, doing business as Harvest-Sugarland,

Appellee.


Appeal from the United States District Court
For the Eastern District of Louisiana


Before HIGGINBOTHAM, EMILIO M. GARZA, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Louisiana law gives a vendor the right to demand dissolution of a sale for nonpayment of the purchase price. In this case, an unpaid vendor sought to dissolve sales of movable property after

-1-

the original purchaser had resold the movables to a third party in good faith. We hold, under these circumstances, that the vendor's exercising its right of dissolution could not impair the third party's rights in the movables. Accordingly, we reverse the district court's judgment and remand this case for further proceedings.

## I. BACKGROUND

Sugarland Motor Company ("Sugarland") owns and operates motor vehicle dealerships in Plaquemine, Louisiana. Those dealerships originate retail installment contracts ("RICs") when they sell vehicles on credit. By executing an RIC, the buyer grants a security interest in his new vehicle to secure his obligation to pay the financed portion of the vehicle's purchase price. Thus, each contract includes the buyer's promise to pay the amount financed plus daily accruing finance charges and a security agreement creating a security interest in the vehicle in favor of Sugarland and its assignees. Immediately after a credit sale is complete, Sugarland assigns the RIC to a consumer finance company.[1] By this point the finance company has already verified the buyer's creditworthiness and agreed to pay Sugarland the financed portion of the price. The buyer then makes monthly payments to the finance

---

[1] An assignment is a "species of sale" under Louisiana law. See Sanson Four Rentals, L.L.C. v. Faulk, 803 So. 2d 1048, 1052 (La. App. 2d Cir. 2001) (citing Scott v. Corkern, 91 So. 2d 569, 571 (La. 1956)). To facilitate application of Louisiana law, we generally refer to the transactions at issue in this case as sales rather than assignments.

company or its assignee.

Argo Financial, Inc. ("Argo"), was a finance company that Sugarland dealt with on a regular basis. When it sold an RIC to Argo, Sugarland would send the original contract to Argo by overnight delivery. Argo usually mailed a check to Sugarland for the full amount financed five to ten days after receiving the RIC. After receiving the payment from Argo, Sugarland would submit a copy of the RIC and a title application for the vehicle described in the RIC to the Louisiana Department of Public Safety and Corrections, Office of Motor Vehicles ("OMV" or "Louisiana OMV"). Under Louisiana law, a security interest in the vehicle would be perfected upon the OMV's receipt of the RIC.[2] The OMV would then issue a certificate of title showing Argo as the vehicle's "first

---

[2] See La. R.S. 10:9-501(a)(1); see also La. R.S. 32:710(A) ("A security interest covering a titled motor vehicle . . . shall be perfected as of the time the financing statement is received by the Department of Public Safety and Corrections, so long as such receipt subsequently is validated by the secretary of the Department of Public Safety and Corrections."). Because the RICs that Sugarland originates provide the name of the buyer (the debtor), the name of the seller (the secured party), and a description of the motor vehicle purchased (an indication of the collateral covered by the security agreement), the contracts satisfy the formal requirements for a financing statement. See La. R.S. 10:9-502(a), :9-504(3); see also David Willenzik, Louisiana Secured Transactions § 6:14, at 6-16 to 6-17 (West 2002) ("Certain lenders choose to file a copy of the borrower's UCC security agreement (rather than a UCC-1 financing statement) in connection with indirect dealer credit sales transactions (particularly those involving motor vehicles). . . . Generally, it is viewed to be easier and less cumbersome for a dealer to require its customers to sign combination retail installment sales contract forms, which include UCC security agreement covenants, and then to file such contract forms with the appropriate filing officer.").

lienholder," and Sugarland would send the certificate to Argo. Argo, in turn, would resell the RIC to another finance company—in this case, Advanta Auto Finance Corporation ("Advanta"). When Argo received a title certificate for a vehicle associated with an RIC that it had sold to Advanta, Argo would forward the certificate to Advanta along with the documents necessary for Advanta to have a new certificate issued noting its security interest in the vehicle.

Two RICs originated by Sugarland are at issue here. Maudria Fox executed the first one on September 29, 1998; Susan and Stephen Kennard (collectively "Kennard") executed the second on October 2, 1998. In each instance, Sugarland sold and delivered the RIC to Argo. But Sugarland did not receive payment from Argo within the customary time frame. After giving several assurances that payment was forthcoming, Argo finally advised Sugarland that it had filed for bankruptcy, that it was therefore unable to fund the RICs, and that Sugarland needed either to get the vehicles back from Fox and Kennard or to finance the sales with another lender.[3] In the meantime, however, Argo had sold and delivered the RICs to Advanta.[4] Unaware that Sugarland had not received payment, Advanta promptly paid Argo the agreed-upon purchase price for each RIC.

After learning that Argo was in bankruptcy, Sugarland informed

[3] Argo filed a Chapter 7 petition on November 3, 1998, in the United States Bankruptcy Court for the Eastern District of Louisiana.

[4] The sales preceded Argo's bankruptcy filing by less than one month.

Fox and Kennard that they needed to switch lenders and convinced them to execute new RICs. Although Fox and Kennard had each made one payment to Advanta when they executed the new RICs, Sugarland claims it was unaware that Advanta had purchased the original contracts from Argo. Sugarland immediately sold the new contracts to Americredit Financial Services, Inc. ("Americredit"), and filed the appropriate documents with the Louisiana OMV. In due course, the OMV issued title certificates showing Americredit as the first lienholder of the Fox and Kennard vehicles. Fox and Kennard then quit making payments to Advanta under the terms of the original RICs and began paying Americredit instead.

Because it never received payment from Argo, Sugarland never filed with the OMV copies of the original RICs or title applications requesting that Argo's security interest be noted on each vehicle's title certificate. It follows that neither Argo nor Advanta ever received title certificates for the Fox and Kennard vehicles. Because Sugarland forwarded the title certificates it actually applied for and received to Americredit, Advanta was never able to obtain new certificates noting its security interests in the vehicles.[5] Thus, although Advanta is still in possession of the original RICs, its security interests in the Fox and Kennard vehicles are unperfected.

In this adversary proceeding related to Argo's bankruptcy,

---

[5] See La. R.S. 32:710(E).

Advanta brought a conversion claim against Sugarland, alleging that Sugarland interfered with or destroyed its right to payment under the original RICs by enticing Fox and Kennard to execute new contracts. Relying on Louisiana Civil Code articles 2561, 2013, and 2016, Sugarland answered that it was not liable to Advanta in tort or otherwise because Argo's failure to pay the purchase prices entitled it to regard the sales of the RICs to Argo as dissolved. The general effect of dissolution is to restore the seller and the buyer to the situation that existed before the sale; thus, Sugarland maintained that the rights in the RICs that Advanta acquired from Argo did not survive the dissolution of the initial sales. Advanta responded that its rights as the owner of the original RICs were governed by Chapter 9 of the Louisiana Commercial Laws ("Chapter 9"), Louisiana's version of U.C.C. Article 9,[6] and were superior to any rights and remedies that Sugarland may have had under the Louisiana Civil Code as a result of Argo's nonpayment of the purchase prices.

This matter went to trial in the bankruptcy court on the stipulated facts appearing in the parties' pretrial order.[7] In its "Proposed Findings of Fact and Conclusions of Law in a Non-Core

---

[6] See La. R.S. 10:9-101 to :9-710.

[7] Sugarland did not consent to the entry of final judgment by the bankruptcy court in this non-core "related to" proceeding. Thus, the bankruptcy judge was required to submit proposed findings of fact and conclusions of law to the district court. See 28 U.S.C. § 157(c).

Proceeding," the bankruptcy court recommended that the district court enter judgment in favor of Advanta. The bankruptcy court rejected Sugarland's argument that it was entitled to regard the sales of the RICs to Argo as dissolved, reasoning that "Advanta, as the holder of a security interest governed by [Chapter 9], has an interest in the RICs that is superior to any right Sugarland may have under the Civil Code." Despite this rejection of Sugarland's defense to Advanta's conversion claim, the bankruptcy court did not consider the merits of that claim. The court based its recommendation instead on a breach of warranty theory that it raised sua sponte. In the "Assignment by Seller" section of the RICs, Sugarland warranted that it would "perfect a security interest in the Property in favor of [Argo]." The court found that Sugarland breached this warranty by not submitting to the Louisiana OMV copies of the original RICs along with title applications requesting that Argo's security interests in the Fox and Kennard vehicles be noted on the respective title certificates. Further finding that Argo's rights vested in Advanta by subrogation, the court concluded that Sugarland was liable to Advanta for breach of warranty.

Sugarland filed objections to the bankruptcy court's proposed conclusions of law. The district court maintained those objections, reasoning that although Sugarland warranted that it would perfect security interests in the Fox and Kennard vehicles in favor of Argo, "[i]t did not . . . warrant that it would do so

prior to being paid."  Contrary to the bankruptcy court's proposed conclusion, the district court determined that "[n]othing in Chapter 9 displaces the general principle of Louisiana law . . . that a seller may deem a contract dissolved if the buyer fails to pay the agreed-upon purchase price."  The court then found that Argo's nonpayment of the purchase prices entitled Sugarland to regard the sales of the RICs to Argo as dissolved and concluded that, as a consequence of dissolution, "any purported assignment of Argo's rights to Advanta was ineffectual."  In accordance with this conclusion, the district court entered a final judgment dismissing Advanta's claim against Sugarland.  This appeal followed.

## II.  ANALYSIS

Because the facts of this case are undisputed and the district court's decision rests solely on a conclusion of law, our review is de novo.[8]

In Louisiana, an unpaid vendor has the right to demand dissolution of a sale made on credit.[9]  Louisiana Civil Code article 2561 provides, in part, that "[i]f the buyer fails to pay

---

[8]  See Matter of Taylor, 132 F.3d 256, 259 (5th Cir. 1998).

[9]  See La. Civ. Code art. 2561; A.N. Yiannopoulos, Property § 121, at 280, in 2 Louisiana Civil Law Treatise (4th ed. 2001). Because Sugarland agreed that payment was due sometime after it delivered the RICs to Argo, the sales at issue here were made on credit.  See Parnell v. Baham, 228 So. 2d 53, 57 (La. App. 4th Cir. 1969) ("When delivery is made and ownership transferred by the seller to the purchaser upon an agreement that the purchaser will pay later—whether it be hours, days, or longer—it is a credit sale."), writ refused, 230 So. 2d 92 (La. 1970).

-8-

the price, the seller may sue for dissolution of the sale."[10]  This substantive right of dissolution is clearly distinguishable from the privilege that the vendor has on the thing sold for the payment of the purchase price: "Exercise of the vendor's privilege involves an assertion of the sale; in contrast, exercise of the vendor's right of dissolution involves a repudiation of the sale and its consequences."[11]

Although Article 2561 speaks only of judicial dissolution, the Civil Code specifies other means of dissolution that may be available to an unpaid vendor.[12]  In certain cases in which an obligor has failed to perform, Article 2013 of the Civil Code permits the obligee to regard the contract as dissolved instead of filing suit.[13]  Article 2016 describes the general circumstances

_____

[10]  La. Civ. Code art. 2561.

[11]  Yiannopoulos, supra note 9, § 121, at 280.  For a discussion of the Louisiana vendor's privilege, see id. § 232.

[12]  See La. Civ. Code. art. 2561 cmt. (i) ("While the thrust of this Article is on judicial dissolution, it does not negate the possibility that dissolution might be effected through some other means provided by law.").

[13]  See La. Civ. Code art. 2013.  Articles 2013 through 2024, the Civil Code's general articles on contract dissolution, compose Chapter 9 of the Code's title on Conventional Obligations or Contracts.  Although Article 2561 appears in the title on Sale, the first article of that title provides that "[i]n all matters for which no special provision is made in this title, the contract of sale is governed by the rules of the titles on Obligations in General and Conventional Obligations or Contracts."  La. Civ. Code art. 2438.  Thus, the general articles on contract dissolution govern the vendor's right of dissolution in the absence of a special provision applicable to sales.  See La. Civ. Code. art. 2561 cmt. (i) (citing La. Civ. Code arts. 2013–2024); see also La.

under which the obligee can take such unilateral action without first serving the obligor with a notice to perform: "When a delayed performance would no longer be of value to the obligee or when it is evident that the obligor will not perform, the obligee may regard the contract as dissolved without any notice to the obligor."[14]  Applying these principles to the contract of sale, it becomes clear that extrajudicial dissolution is available in cases in which the buyer has advised the seller that he cannot or will not perform his obligation to pay the purchase price.

Because Argo had advised Sugarland that it was in bankruptcy and was therefore unable to pay the purchase prices for the Fox and Kennard RICs, the district court found that Sugarland was entitled to regard the sales of the RICs to Argo as dissolved.  Although Advanta disputes this finding, its principal argument is that Chapter 9 of the Louisiana Commercial Laws, and not the Civil Code articles on dissolution, controls the outcome of this case.[15]  The

---

Civ. Code. art. 2564 cmt. (explaining that changes were made to the article as part of the 1993 revision of the Louisiana law of sale to achieve consistency with the general articles on dissolution).

[14] La. Civ. Code art. 2016.

[15]  In brief, Advanta contends that both RICs are chattel paper, such that the perfection and priority rules of Chapter 9 apply. See La. R.S. 10:9-102(a)(11) ("'Chattel paper' means a record or records that evidence both a monetary obligation and a security interest in specific goods . . . ."); La. R.S. 10:9-109(a)(3) (providing that Chapter 9 applies to sales of chattel paper); id. U.C.C. cmt. 5 (stating that the principal effect of subjecting sales of chattel paper to U.C.C. Article 9 is to apply the Article's perfection and priority rules to those transactions).

ultimate merit of this argument hinges on whether Sugarland's right of dissolution conflicts with Advanta's rights under Chapter 9.[16] Fortunately, we need not decide today whether such a conflict exists, for we agree with Advanta's alternative argument—grounded in the Louisiana Civil Code—that even if Sugarland was entitled to regard the sales of the RICs to Argo as dissolved, dissolution could not impair the rights that Advanta acquired from Argo in good faith.[17]

Because dissolution restores the parties to the situation that existed before they entered the contract of sale,[18] problems arise when the property sold is no longer in the hands of the original purchaser. In such cases, the availability of dissolution and its effect on the rights that a third party has acquired has long depended on whether the sale involves movable or immovable

---

[16] See La. R.S. 9:3192 ("In case of conflict between the provisions of Title VII of Book III of the Civil Code, governing sales[,] and any provisions of any special legislation, such as those contained in Titles 9 and 10 of the Louisiana Revised Statutes of 1950 and the Louisiana Lease of Movables Act, the latter shall prevail with regard to transactions subject thereto."); cf. La. R.S. 10:1-103 ("Unless displaced by the particular provisions of this Title, the other laws of Louisiana shall apply.").

[17] We note, however, that the district court's conclusion that the vendor's right of dissolution does not conflict with any specific provision of Chapter 9 finds support in the writings of Louisiana's leading property law scholar. See Yiannopoulos, supra note 9, § 233, at 468 n.10 (4th ed. 2001 & Supp. 2002) ("The vendor's right of dissolution is not affected by Chapter 9, and it would seem that this right primes a later security interest.").

[18] See La. Civ. Code art. 2018.

-11-

property.[19]  In <u>Robertson v. Buoni</u>, the Louisiana Supreme Court reviewed over a century of jurisprudence and observed that the "right to dissolution of a sale of an immovable for nonpayment is not contingent on the absence of a third party purchaser.  A vendor seeking dissolution of the sale may do so even after the property has left the hands of the original purchaser."[20]  On the other hand, courts have held that the unpaid vendor of a movable can exercise

---

[19] In Louisiana, movables are a residual category of things. Yiannopoulos, <u>supra</u> note 9, § 148, at 342.  Article 475 of the Civil Code provides that "[a]ll things, corporeal or incorporeal, that the law does not consider as immovables, are movables."  La. Civ. Code art. 475.  As this provision suggests, the law recognizes two kinds of immovables: corporeal immovables and incorporeal immovables.  "Corporeal immovables are tracts of land with their component parts, such as buildings, other constructions permanently attached to the ground, standing timber, and unharvested crops or ungathered fruits of trees."  Yiannopoulos, <u>supra</u> note 9, § 113, at 264 (citing La. Civ. Code arts. 462, 463).  Incorporeal immovables are rights and actions that have an immovable object; this category includes personal servitudes, predial servitudes, mineral rights, and petitory or possessory actions.  <u>Id.</u> (citing La. Civ. Code art. 470).  Because the RICs at issue in this case do not fall within either category of immovables, they are movables as a matter of law.

[20] 504 So. 2d 860, 863 (La. 1987) (citing <u>Stevenson v. Brown</u>, 32 La. Ann. 461 (1880)).  <u>But see</u> <u>id.</u> at 863 & n.1 (Lemmon, J., concurring) ("When a sale of immovable property has been recorded, the seller's right to dissolution, as against a subsequent purchaser, may depend on whether the recorded original sale indicates that the price has or has not been paid.  A subsequent purchaser should be protected against a claim for dissolution of a recorded sale unless the records indicate that the price was not paid." (citing A.N. Yiannopoulos, Property § 165, <u>in</u> 2 Louisiana Civil Law Treatise (2d ed. 1980))); Yiannopoulos, <u>supra</u> note 9, § 233; <u>LeBlanc v. Bernard</u>, 554 So. 2d 1378, 1381 (La. App. 1st Cir. 1989) (holding that a third party is protected against an unpaid vendor's claim for dissolution when the public records reflect that the purchase price has been paid), <u>writ denied</u>, 559 So. 2d 1357 (La. 1990).

the right of dissolution "only so long as the movable remains in the possession of the original vendee."[21]

According to Professor Yiannopoulos, the application of different rules to movables and immovables reflects that transactions involving the former are generally not protected by a system of public records:[22] "Immovable property has been protected by the law much more effectively than movable property; and, whereas security of acquisition of immovables is achieved by the system of public records, security of transaction and acquisition of movables is enhanced by the bona fide purchaser doctrine."[23] Thus, it is in the interest of security of transactions that the vendor's right of dissolution "becomes inoperative against third possessors of movables."[24]

The Louisiana Legislature had this interest in mind when it enacted Civil Code article 2021 as part of the 1984 revision of the law of obligations. That article provides: "Dissolution of a

---

[21] W.M. Bailey & Sons v. Western Geophysical Co., 66 So. 2d 424, 428 (La. App. 2d Cir. 1953) (citing Lalance Grosjean Mfg. Co. v. George G. Wolff & Levi, 28 La. Ann. 942 (1876)).

[22] An obvious and notable exception is the title registration system for motor vehicles. See La. R.S. 32:701–738.

[23] Yiannopoulos, supra note 9, § 233, at 469.

[24] Id. See Lalance Grosjean, 28 La. Ann. at 942 ("The rights to and upon movable property are subject to rules different from those relating to immovables . . . . The interests of commerce make some such difference necessary, and the business community would feel much alarm at the doctrine that any vendor could dissolve the sale of merchandise found in the hands of a second or third vendee.").

contract does not impair the rights acquired through an onerous contract by a third party in good faith.  If the contract involves immovable property, the principles of recordation apply."[25]  Where credit sales of movables are concerned, Article 2021 is consistent with the earlier jurisprudential rule that the unpaid vendor cannot exercise his right of dissolution if the movables sold are no longer in the possession of the original purchaser.[26]  Although the courts' focus was on whether the vendor could "exercise" his right of dissolution, and Article 2021 assumes the dissolution and addresses its consequences, the end result is the same: the third party retains the rights he has acquired.  We therefore find it clearly established under Louisiana law that the exercise of the

---

[25] La. Civ. Code art. 2021.  See generally Shael Herman, Detrimental Reliance in Louisiana Law—Past, Present, and Future (?): The Code Drafter's Perspective, 58 Tul. L. Rev. 707, 752 (1984) (explaining that Article 2021 reflects an effort to "broadly articulate the principle of protection of the bona fide purchaser of both movables and immovables who acquires rights by onerous contract in reliance upon either the public records (in the case of immovables) or the transferor's apparent authority to transfer (in the case of movables)").

[26] According to the revision comment, Article 2021 expresses a principle implied in Article 3229 of the Civil Code.  See La. Civ. Code art. 2021 cmt.  Article 3229, which applies only to cash sales of movables, provides that an unpaid seller can "claim back the things in kind, which were thus sold, as long as they are in possession of the purchaser, and prevent the resale of them; provided the claim for restitution be made within eight days of the delivery at farthest, and that the identity of the objects be established."  La. Civ. Code art. 3229 (emphasis added).  Before the enactment of Article 2021, courts that held that the right of dissolution could be exercised only so long as the movable sold on credit remained in the possession of the original purchaser did so by analogy to Article 3229.  See Yiannopoulos, supra note 9, § 233, at 468.

vendor's right of dissolution does not impair the rights in movable property that a third party has acquired through an onerous contract in good faith.

In this case, Advanta undoubtedly acquired its rights in the RICs through an onerous contract with Argo.[27] Furthermore, Sugarland does not dispute that Advanta acquired those rights in good faith. Because the record indicates that Advanta paid reasonable prices for the RICs and was not aware of Argo's nonpayment, we find that Advanta stands in the position of a good faith purchaser.[28] We therefore conclude that even if Sugarland was entitled to regard the sales of the RICs to Argo as dissolved, dissolution of the sales could not impair the rights that Advanta acquired from Argo, which include the right to receive payments under the terms of the RICs.

Accordingly, we hold that the district court's dismissal of Advanta's conversion claim on the basis of the vendor's right of dissolution was erroneous. Because the district court did not consider the merits of that claim, we find it appropriate to remand this case so that it may do so in the first instance.[29]

---

[27] See La. Civ. Code art. 1909 ("A contract is onerous when each of the parties obtains an advantage in exchange for his obligation.").

[28] See generally Saúl Litvinoff, The Law of Obligations § 1.8, in 5 Louisiana Civil Law Treatise (2d ed. 2001) (discussing the concept of good faith).

[29] Advanta has made no argument to this court in support of the bankruptcy court's recommendation that judgment be entered in its

-15-

### III. CONCLUSION

For the foregoing reasons, we reverse the district court's judgment and remand this case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

favor on breach of warranty grounds. In fact, Advanta maintains in its briefs that its only cause of action against Sugarland is for tortious conversion under Louisiana law. Thus, the district court should not reconsider the bankruptcy court's recommendation on remand.

EMILIO M. GARZA, Circuit Judge, specially concurring:

I agree with the majority opinion that the district court's dismissal of Advanta's conversion claim on the basis of the vendor's right of dissolution was erroneous. However, I cannot agree with the majority opinion that, to resolve this matter, we need only look to the Louisiana Civil Code (the "Civil Code"). On the contrary, Chapter 9 of the Louisiana Commercial Laws ("Chapter 9"), Louisiana's version of UCC Article 9, controls the outcome of this case. Accordingly, I concur in the judgment only.

The majority opinion attempts to avoid the question at hand)) whether Sugarland's rights under Articles 2013, 2016, and 2549 of the Civil Code, providing that a seller may, on its own initiative and without judicial authorization, deem a contract dissolved if the buyer fails to pay the agreed-upon purchase price,[30] conflict with Advanta's rights as a good faith purchaser of chattel paper under the particular provisions of Chapter 9 dealing with sales of chattel paper and the priority of a chattel paper purchaser. To avoid answering this question, the majority opinion reasons that, under Article 2021 of the Civil Code, Advanta retains the rights in the RICs it acquired from Argo *even if* Sugarland was entitled to regard the assignment agreement between Sugarland and Argo as dissolved. The problem with this reasoning is that Article 2021 simply cannot apply where, as here,

---

[30]  *See* La. Civ. Code Art. 2013 ("When the obligor fails to perform, the obligee has a right to the judicial dissolution of the contract or, according to the circumstances, to regard the contract as dissolved. In either case, the obligee may recover damages. In an action involving judicial dissolution, the obligor who failed to perform may be granted, according to the circumstances, an additional time to perform."); La. Civ. Code Art. 2016 ("When a delayed performance would no longer be of value to the obligee or when it is evident that the obligor will not perform, the obligee may regard the contract as dissolved without any notice to the obligor."); La. Civ. Code Art. 2549 ("The buyer is bound to pay the price and to take delivery of the thing.").

the contract at issue was *never dissolved*. Article 2021 provides that "[*d*]*issolution of a contract does not impair the rights acquired through an onerous contract by a third party in good faith.*" La. Civ. Code Art. 2021 (emphasis added). From its plain text it is clear that, for Article 2021 to apply, there must first be a *dissolved* contract.[31] However, contrary to Sugarland's contention, the assignment agreement at issue in this case ) ) a credit sale between Sugarland and Argo ) ) was never dissolved. Even though Articles 2013, 2016, and 2549 of the Civil Code generally permit a seller (such as Sugarland), on its own initiative and without judicial authorization, to deem a contract dissolved if a buyer (such as Argo) fails to pay the agreed-upon purchase price, the specific provisions of Chapter 9 dealing with sales of chattel paper and the priority of a chattel paper purchaser (discussed below) precluded Sugarland from unilaterally and extrajudicially dissolving the assignment agreement between it and Argo once Advanta had already purchased the RICs from Argo in good faith.

In the context of this case, the specific provisions of Chapter 9 not only protect Advanta's ownership interest in the RICs against the competing claims of Argo's creditors, including Sugarland, but also *displace* the more general Civil Code provisions, found at Articles 2013, 2016, and 2549, addressing a seller's ability to unilaterally and extrajudicially deem a contract dissolved if the buyer fails to pay the agreed-upon purchase price. Under Chapter 9, the assignment agreement between Sugarland and Argo was a "true sale" of chattel paper, passing title in the RICs to Argo. *See* La. R.S. 10:9-109(e) (providing that the parties' characterization of a transaction as a sale of chattel paper is conclusive that the transaction is a "true sale" and that title has passed to the party characterized as

---

[31]    As the majority opinion correctly acknowledges, Article 2021 "assumes the dissolution and addresses its consequences."

the purchaser, regardless of any other term of the parties' agreement); La. R.S. 10:9-318(a) (providing that a seller of chattel paper retains no legal or equitable interest in the chattel paper sold).[32] And, by paying for and taking possession of the RICs from Argo, Advanta perfected a Chapter 9 security interest in the RICs, thereby protecting its rights in the chattel paper from the competing rights of Argo's creditors, including Sugarland.[33] Even assuming, *arguendo*, that Sugarland acquired a security interest in the RICs,[34] Sugarland failed to perfect its security interest

---

[32] Both parties agree that the RICs in question are "chattel paper" under Chapter 9 of the Louisiana UCC. *See* La. R.S. 10:9-102(a)(11) (defining "chattel paper" as "a record or records that evidence both a monetary obligation and a security interest in specific goods . . . .").

[33] Sugarland became Argo's creditor by virtue of its agreement to assign the RICs to Argo on a deferred payment basis, a transaction that is treated as a completed credit sale under Louisiana law. *See Succession of Dunham*, 408 So.2d 888, 896-97 (La. 1981) (explaining that, under Louisiana law, a conditional sale is treated as a completed credit sale, "in which ownership of the object of the sale passes at the time the contract is entered into"); *see also In re Wallace Lincoln-Mercury*, 469 F.2d 396, 402 (5th Cir. 1972) ("'[Under Lousiana law, a conditional sale whereby title is retained in the vendor is legally impossible, so the courts respect the contract but ignore the provision retaining title in the vendor.'" (quoting *Morelock v. Morgan & Byrd Gravel Co.*, 141 So. 368, 374 (1932)). As a result of this credit sale, Argo acquired rights in the RICs that are enforceable under Chapter 9 of the Louisiana UCC. *See* La. R.S. 10:9-109(e); La. R.S. 10:9-318(a). Likewise, when Advanta purchased the RICs from Argo, Advanta acquired rights in the RICs that are enforceable under Chapter 9. *See* La. R.S. 10:9-109(e); La. R.S. 10:9-318(a). As a good faith purchaser of the RICs, Advanta perfected its security interest in the RICs by taking possession of the signed originals, which were delivered to Advanta by Argo. *See* La. R.S. 9-313(a) (providing for "possession" perfection of a security interest in chattel paper).

[34] Arguably, the understanding between Sugarland and Argo, which made the initial sale of the RICs contingent upon Argo's payment of the purchase price, amounts to Argo's grant to Sugarland of a UCC security interest in the purchased RICs. Under La. R.S. 10:1-

by retaining possession of the RICs pending Argo's payment or by filing a UCC-1 financing statement. *See* La. R.S. 9-313(a) ("possession" perfection of a security interest in chattel paper); La. R.S. 10:9-312(a) ("filing" perfection of a security interest in chattel paper). Thus, Advanta's perfected security interest in the RICs trumps any unperfected security interest Sugarland might have acquired. *See* La. R.S. 10:9-322(a)(2) (perfected security interest has priority over an unperfected security interest of a competing creditor).[35] Because these particular provisions of Chapter 9 specifically address the sale of chattel paper and the priority of a good faith purchaser's rights in the purchased chattel paper over the competing claims of the seller's creditors, they displace)) in this context)) the more general provisions of the Civil Code, found at Articles 2013, 2016, and 2549,

_____

201(37), a seller's reservation of title to, or rights in, the purchased personal (movable) property, conditioned on the buyer's payment of the purchase price, may amount to the grant of an Chapter 9 security interest. However, as explained above, the transaction at issue was a "true sale" of chattel paper transferring title in the RICs to Argo under La. R.S. 9:109(e).

[35] According to Sugarland, the enforceability of Advanta's security interest in the RICs depends on the enforceability of the underlying principal obligation, since a security interest is generally considered to be an "accessory" obligation under the Louisiana Civil Code. On the contrary, the security interest of a chattel paper purchaser is not an "accessory" obligation, since it does not secure a debt or performance obligation. *See* La. Civ. Code. art. 1913 ("A contract is accessory when it is made to provide security for the performance of an obligation. Suretyship, mortgage, pledge, and other types of security agreements are examples of such a contract."). Rather than securing a debt or performance obligation, a sale of chattel paper transfers title and ownership from the seller to the purchaser. *See* La. R.S. 10:9-109(e). Thus, Advanta's ownership interest in the RICs is not a secured interest in the traditional sense. *See id*. To conclude otherwise is to overlook that the Louisiana UCC draws a distinction between a chattel paper purchaser's security interest and a traditional security interest in personal property securing payment or performance of an obligation. *See* La. R.S. 10:1-20(37).

providing that a seller may, on its own initiative and without judicial authorization, deem a contract dissolved if the buyer fails to pay the agreed-upon purchase price. *See* La. R.S. 10:1-103 ("Unless displaced by the particular provisions of this Title, the other laws of Louisiana shall apply."); La. R.S. 9:3192 (providing that, "[i]n the case of conflict between the provisions of Title VII of Book III of the Civil Code, governing sales and any provisions of any special legislation, such as those contained in Titles 9 and 10 [the Louisiana UCC] of the Louisiana Revised Statutes of 1950 . . . the latter shall prevail with regard to transactions subject thereto.").[36] Thus, Sugarland can not now claim that, even though Advanta purchased the RICs from Argo in good faith, Sugarland was entitled to unilaterally and extrajudicially deem the assignment agreement between it and Argo to be dissolved simply because Argo failed to pay it the agreed-upon purchase price.[37]

---

[36] The majority opinion notes, in a footnote, that "the district court's conclusion that the vendor's right of dissolution does not conflict with any specific provision of Chapter 9 finds support in the writings of Louisiana's leading property law scholar." On the contrary, the section of the property law treatise cited by the majority opinion addresses only an unpaid vendor's right to demand *judicial* dissolution of a contract under Article 2561. *See* A.N. Yiannopoulous, Property § 233 n.5 in La. Civ. Law Treatise (4th ed. 2001)(making clear that the "vendor's right of dissolution" discussed in § 233 is the right to seek judicial dissolution, governed by La. Civ. Code. arts. 2561-2564). The majority opinion cites to no authority or case addressing an unpaid vendor's right to extrajudicially and unilaterally dissolve a contract under Articles 2013, 2016, and 2549 of the Civil Code, the articles which were cited by the district court as its basis for its summary-judgment dismissal of Advanta's tort claim against Sugarland.

[37] Sugarland also contends that, under § 9-404(a) of the Louisiana UCC, Advanta's rights in the RICs are subject to any defense or claim arising from the transactions giving rise to the RICs, including Sugarland's defense that its assignments to Argo are dissolved because of Argo's failure to pay the purchase prices for each. *See* La. R.S. 10:9-404(a). Sugarland's reliance on § 9-404(a) is in error. That section provides that "an assignee generally takes an assignment subject to the defenses and claims of

For the foregoing reasons, I cannot agree with the majority opinion that, under Article 2021 of the Civil Code, Advanta retains the rights in the RICs that it acquired from Argo even if Sugarland was entitled to regard the assignment agreement between it and Argo as dissolved. Chapter 9 governs whether the assignment of RICs between Sugarland and Argo was effectual, and its specific provisions dealing with sales of chattel paper and the priority of a chattel paper purchaser precluded Sugarland from extrajudicially and unilaterally dissolving the assignment agreement between it and Argo once Advanta had already purchased the RICs from Argo in good faith.

---

an account debtor." La. R.S. 10:9-404 cmt. 2. In other words, § 9-404(a) applies to claims and defenses *an account debtor* (the party obligated under an account or chattel paper) can assert against an assignee (the purchaser of accounts and chattel paper). *See id.* Here, Sugarland is *not* an account debtor; the Payment Obligors are the only account debtors. Therefore, § 9-404(a) of the Louisiana UCC has no application to Sugarland's rights *vis-a-vis* Advanta, the second purchaser of the RICs.